(No. 69417.—

PIERRE CROISSANT, Indiv. and as President of the Twin Oaks West—Burr Oaks Homeowners Association, an Illinois Not-for-Profit Corporation, *et al.*, Appellees, v. THE JOLIET PARK DISTRICT *et al.*, Appellants.

*Opinion filed December 20, 1990.*

Wright & Block, Ltd., of Joliet (William G. Troka and James E. Babcock, of counsel), for appellants.

Douglas L. Ziech, of Joliet, for appellees.

JUSTICE MILLER delivered the opinion of the court:

The present appeal involves actions taken by the defendants, the Joliet Park District and its board of commissioners, pertaining to the Joliet Park District Airport. The circuit court of Will County ruled that certain measures approved by the board were invalid because one of the commissioners who voted on the measures was acting under a conflict of interest, as defined and prohibited by statute. We allowed the defendants' motion for a direct appeal to this court pursuant to our Rule 302(b) (107 Ill. 2d R. 302(b)).

The plaintiffs, Pierre Croissant and Carol Karner, commenced the present action on July 19, 1989, by filing in the circuit court of Will County a complaint for declaratory and injunctive relief. The plaintiffs are residents and taxpayers of the Joliet Park District, and they brought suit on their own behalf and as representatives of residents of certain subdivisions located in the vicinity of the park district airport. In their complaint, the plaintiffs alleged that one of the park district commissioners, Jeffrey M. Dames, was acting under a statutorily prohibited conflict of interest because he owned an aviation business that was a tenant of the park district airport. In their complaint, the plaintiffs asked the circuit court

to invalidate certain measures concerning the airport that had been approved by the park district board with Commissioner Dames' affirmative vote. The plaintiffs based their suit on section 3(a) of the Corrupt Practices Act (Ill. Rev. Stat. 1987, ch. 102, par. 3(a)).

The plaintiffs later filed a second amended complaint, on which the matter was heard. The plaintiffs challenged a number of actions taken by the park district board during the period in which Dames was a commissioner. Only two of the challenged actions are at issue in the present appeal: the board's decision on June 19, 1989, to purchase a new tug, or tractor, for use at the airport, and the board's decision on July 17, 1989, to participate in a block grant program for airport expansion. In their complaint, the plaintiffs asked the circuit court to invalidate each of the challenged actions and, further, to enjoin the park district board from taking any further steps with respect to the block grant program.

At an evidentiary hearing, the parties introduced testimony and exhibits concerning airport operations, the board actions challenged by the plaintiffs, and Commissioner Dames' business activities. The judge invalidated the two measures at issue here—the board's approval of the purchase of a new tug, and the board's decision to participate in the block grant program—and enjoined the board from taking any further steps concerning the block grant program. The judge noted that the airport tug had already been purchased, however, and stated that his ruling was not intended to preclude the board from ratifying its earlier decision to make the purchase.

The defendants filed a timely notice of appeal from the adverse portions of the circuit court's order. We allowed the defendants' subsequent motion requesting that the appeal be taken directly to this court. (107 Ill. 2d R. 302(b).) The plaintiffs have raised no issue with respect to the portions of the court's order upholding the other

board actions challenged by them in their complaint, and we shall limit our discussion accordingly.

The Joliet Park District is governed by a board of commissioners consisting of five elected members. Jeffrey M. Dames was elected a commissioner in March 1989, and he assumed office the following month. Dames resigned from his position on the board effective July 28, 1989. The Joliet Park District owns and operates the Joliet Park District Airport, which is classified as a general aviation airport. It was constructed in 1930, and various improvements have been made to it since that time. Those improvements, which occurred before Dames' tenure on the board and are not challenged here, have included the addition of a new taxiway, the acquisition of various easements, the construction of new hangar facilities, and the installation of new lighting. The airport currently has two runways; one of them is paved, and the other is sod. Because of the shortness of the runways, larger aircraft are unable to use the airport.

In 1987, the park district board approved an airport layout plan, or master plan, that set forth various improvements deemed by the board to be necessary for modernization of the airport facilities. Dames was not a member of the park district board at the time the master plan was approved. Completion of the various improvements envisioned in the master plan was estimated to cost $5.3 million. On July 17, 1989, the board decided, by a margin of 3 to 2, with Commissioner Dames casting an affirmative vote, to participate in a block grant program to fund airport improvements. It appears from the record that the decision to take part in the block grant program was in furtherance of the master plan previously adopted by the board. The first step of the block grant program, and the one approved by the board at the July 17 meeting, called for the expenditure of $1.5

million for land acquisition for airport expansion. Of that sum, 90% was to be provided by the Federal government, 5% by the State government, and the remaining 5% by the park district. The same day, the board executed a letter of agreement expressing the park district's intention to participate in the block grant program. The measure approved by the board on July 17, 1989, does not commit the park district to undertake any particular action in the future, however; other stages of the master plan, and of the block grant program, will separately require the board's approval at the appropriate times.

The other action of the board that was challenged by the plaintiffs and invalidated by the circuit court was the board's unanimous decision on June 19, 1989, to purchase a new tug, at a cost of $12,595. A tug is a tractor-type device that is used to pull aircraft. According to the testimony presented at the evidentiary hearing, certain mechanical problems caused the old tug to make jerking movements, which could damage the struts and landing gear of larger aircraft.

Dames is a licensed commercial pilot and is the sole owner of Dames Aviation, Inc. Dames Aviation owns two airplanes and provides service throughout the continental United States, Canada, Mexico, and the Bahamas. The company leases office space and hangar space at the park district airport and regularly stores its aircraft there. In addition to being a pilot, Dames is a licensed funeral director and embalmer; he estimated that he spends only about 15% of his professional time on matters pertaining to Dames Aviation.

Dames testified that he did not have any interest in the land that was to be acquired under the block grant program, and that he did not have any relationship with real estate agents who would be handling the transactions. Dames also stated that he did not require the use

of the airport tug for movement of his aircraft, because of their small size, and, in any event, that he was able to use the old tug safely. Dames also stated that he did not have any interest in the company or dealer from whom the tug was purchased.

The plaintiffs base the present action on section 3(a) of the Corrupt Practices Act, which provides:

> "No person holding any office, either by election or appointment under the laws or constitution of this state, may be in any manner interested, either directly or indirectly, in his own name or in the name of any other person, association, trust or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote. No such officer may represent, either as agent or otherwise, any person, association, trust or corporation, with respect to any application or bid for any contract or work in regard to which such officer may be called upon to vote. Nor may any such officer take or receive, or offer to take or receive, either directly or indirectly, any money or other thing of value as a gift or bribe or means of influencing his vote or action in his official character. Any contract made and procured in violation hereof is void." Ill. Rev. Stat. 1987, ch. 102, par. 3(a).

Section 3(a) thus contains three distinct prohibitions, and contracts made or procured in violation of any of the prohibitions are void. The statute reflects the common law rule. (See *City of Chicago ex rel. Cohen v. Keane* (1976), 64 Ill. 2d 559, 564-65.) The prohibition relied on by the plaintiffs in the present case is the first, which bars officers from having an interest, direct or indirect, "in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote."

In addition, a violation of the statute may constitute a criminal offense and may result in the officer's forfeiture of his position. Section 4 of the Act provides:

"Any alderman, member of a board of trustees, supervisor or county commissioner, or other person holding any office, either by election or appointment under the laws or constitution of this state, who violates any provision of the preceding sections, is guilty of a Class 4 felony and in addition thereto, any office or official position held by any person so convicted shall become vacant, and shall be so declared as part of the judgment of court." Ill. Rev. Stat. 1987, ch. 102, par. 4.

The Act also contains several exceptions to its prohibitions. (See Ill. Rev. Stat. 1987, ch. 102, pars. 3(b), (c), (d).) Subject to specified limits, a public body may enter into contracts with vendors and other suppliers in which officers have certain ownership interests. The interest must be disclosed in advance, and the officer must abstain from voting on any contract in which he has an interest. There is no contention in the present case that any of the statutory exceptions are applicable here.

The question presented by the case at bar is one of statutory construction, and accordingly our task is to ascertain and give effect to the intent of the legislature. (*People v. Parker* (1988), 123 Ill. 2d 204, 209.) Statutes are to be construed in a manner that avoids absurd or unjust results. (*Carson Pirie Scott & Co. v. Department of Employment Security* (1989), 131 Ill. 2d 23, 45.) Penal statutes will be construed strictly, and not extended beyond their terms (*People v. Eagle Food Centers, Inc.* (1964), 31 Ill. 2d 535, 539), and ambiguities will be resolved in favor of lenity (*People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 370-71).

The sole basis for the conflict alleged in the present case is Dames' dual status as a park district commissioner and a tenant of the park district airport. It has been the plaintiffs' theory throughout these proceedings that Commissioner Dames was disqualified from voting on matters concerning the park district airport as long

as the company he owned remained a tenant of those facilities. The plaintiffs base that theory on this court's decision in *Brown v. Kirk* (1976), 64 Ill. 2d 144, which held that tenants of a housing authority were statutorily disqualified from serving on the housing authority's board of directors.

Before this court, the defendants emphasize that the challenged board actions were intended to improve the safe and efficient operation of the airport facilities, and to make the airport more accessible to aircraft that cannot now be accommodated there safely. We have no reason to doubt that the measures would have those effects, nor do we question the sincerity of the park district commissioners, including Mr. Dames, in voting for them. The statute at issue, however, does not provide one rule for meritorious actions and a different rule for meritless ones. See *People ex rel. Pearsall v. Sperry* (1924), 314 Ill. 205, 209.

The plaintiffs in *Brown*, tenants of a public housing authority, sought a declaratory judgment that they were not barred from serving as housing authority commissioners by either the Housing Authorities Act or the Corrupt Practices Act. The circuit court ruled that the tenants were barred from serving as commissioners. The appellate court reversed, holding that the statutory provisions did not preclude the tenants from serving as commissioners. This court reversed the appellate court and upheld the circuit court, determining that tenants were statutorily disqualified from serving as commissioners.

In *Brown*, the court first determined that a tenant would be barred from serving as a housing authority commissioner by the conflict of interest prohibition contained in section 5 of the Housing Authorities Act (Ill. Rev. Stat. 1975, ch. 67½, par. 5 ("No commissioner *** shall acquire any interest direct or indirect in any pro-

ject or in any property included or planned to be included in any project, nor shall he have any interest direct or indirect in any contract or proposed contract for materials or services to be furnished or used in connection with any project")). In discussing that provision, the court in *Brown* quoted approvingly a Connecticut opinion construing a similar statute. In view of the broad range of matters regularly before a housing commission, the Connecticut court believed that a tenant's personal interests would be implicated in virtually every official action taken. (*Brown*, 64 Ill. 2d at 149-50, quoting *Housing Authority v. Dorsey* (1973), 164 Conn. 247, 252-53, 320 A.2d 820, 823.) *Brown* agreed that a tenant's "continuing contractual relationship with his landlord" (64 Ill. 2d at 148) brought the tenant within the scope of the prohibition found in section 5 of the Housing Authorities Act.

In *Brown* the court also concluded that service by a housing authority tenant as a commissioner was barred by section 3 of the Corrupt Practices Act. The appellate court in that case found that the Act did not preclude a tenant from serving on a housing authority commission because a person's status as a tenant did not give the person "any interest, financial or otherwise, in the business and welfare of parties with whom the Housing Authority may contract." (*Brown v. Kirk* (1975), 33 Ill. App. 3d 477, 482.) The appellate court further reasoned that section 3 was intended to prevent public officers from using their positions and influence for their own personal gain. *Brown*, 33 Ill. App. 3d at 483.

This court rejected the appellate court's interpretation of section 3(a) as "unduly narrow." The court stated:

"Like most other conflict of interest provisions, it is aimed not only at the actual bad faith abuse of power for an officer's own personal benefit, but is also designed to

prevent the creation of relationships which carry in them the potential of such abuse, by removing the possibility of temptation." (*Brown*, 64 Ill. 2d at 151.)

The court found support in its earlier decision in *Hoskins v. Walker* (1974), 57 Ill. 2d 503, which upheld, against constitutional challenge, a parallel provision in the School Code that barred members of the State Board of Education from having employment or administrative relationships with various other educational entities. (See Ill. Rev. Stat. 1975, ch. 122, par. 1A—2.) The purpose of the School Code provision was " 'to prevent any potential conflict of interests and to prevent placing people on the Board whose other interests would naturally tend to promote or favor one segment of the State's educational structure over another.' " *Brown*, 64 Ill. 2d at 151, quoting *Hoskins*, 57 Ill. 2d at 509.

We decline to read *Brown* in the broad manner suggested by the plaintiffs. As the court's references to *Dorsey* and *Hoskins* demonstrate, the central concern in *Brown* was with the existence of competing interests or loyalties that could continually hamper a person's performance as a member of a public body. Moreover, it should be noted that the legislature later reversed the holding in *Brown*, amending section 5 of the Housing Authorities Act to permit at least one tenant of a housing authority to serve on a housing authority board. (See Pub. Act 80—812, eff. Oct. 1, 1977 (amending Ill. Rev. Stat. 1977, ch. 67½, par. 5).) Any contention that *Brown* announced a *per se* rule disqualifying tenants of public bodies from serving as officers of the same agencies is contradicted by the subsequent legislative action.

We agree with the defendants that the present record does not support the conclusion that Dames had a conflict of interest, as defined by section 3(a), in voting on the two matters that are at issue here: the decision to take part in the block grant program for airport expan-

sion, and the decision to buy the airport tug. The statute prohibits a public officer from being "in any manner interested, either directly or indirectly, in his own name or in the name of any other person, association, trust or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote." (Ill. Rev. Stat. 1987, ch. 102, par. 3(a).) We recognize, of course, that the language of the statute is expansive. (See *Miller v. County of Lake* (1980), 79 Ill. 2d 481, 490 ("[t]he statutory prohibition in section 3[(a)] could scarcely be broader").) Nonetheless, we do not consider that the statute was intended to reach situations such as the present, in which the public officer is not himself financially interested, either directly or indirectly, in the contract or the performance of the work, and in which the only benefit flowing to the officer from such action is no different from the benefits enjoyed by the public at large.

It is undisputed that Dames had no interest in any of the land that was to be acquired under the agreement of July 17, 1989, to participate in the block grant program, and that he had no interest in the company that sold the aircraft tug to the park district. The case at bar thus lacks the immediate, ascertainable interest that more frequently forms the basis for an allegation of a violation of section 3(a). (*Cf. Miller v. County of Lake* (1980), 79 Ill. 2d 481 (violation found in vote by· public officer authorizing placement of public funds in bank of which officer was stockholder); *People v. Savaiano* (1976), 66 Ill. 2d 7 (violation found in participation by public officer in decisions to purchase land in which officer had recently held interest); *Robertson v. Binno* (1978), 56 Ill. App. 3d 390 (violation found in decision by township highway commissioner to close township road at request of company that owned land farmed by commissioner under sharecrop agreement).) In the present case, the plaintiffs

failed to present evidence that Commissioner Dames stood to benefit, directly or indirectly, from the actions challenged here. Although Dames, as owner of Dames Aviation, could make use of improvements to the airport facilities, where his company was a tenant, nothing in the record indicates that he or his company had an interest in the contracts or work authorized by the park district board in the actions challenged here.

To be sure, improvements undertaken by the park district may make the Joliet airport a more desirable site for aviation purposes, and any commissioner might later decide to make use of those developments and begin an aviation business there. But there was no showing that Dames intended to expand his aviation business. The plaintiffs introduced into evidence minutes of the July 17, 1989, meeting at which the board agreed to participate in the State block grant program. Speaking in favor of the block grant program, Dames stated at the meeting that he wanted bigger aircraft to be able to use the airport. At the evidentiary hearing, Dames elaborated on the substance of his earlier remarks. He explained that his support of the expansion plan was rooted in his concern for airport safety. Thus, the record establishes, at most, that the improvements to the park district airport would make the facilities accessible to larger aircraft. There is no evidence that Dames, at the time he voted on the challenged measures, intended to expand his aviation business in response to those actions. At oral argument before this court, plaintiffs' counsel contended that improved airport facilities and equipment would enable Dames to use larger aircraft in his business. Counsel acknowledged, however, that there was no evidence that Dames planned to do that. Thus, according to the record in the present case, the advantage to Dames from the board actions challenged here was no different from the advantage that any other board member, or resident or

taxpayer of the park district, would gain from improvements to the park district airport.

We are aware that the appellate court in *Brown* made a similar observation with respect to the interests of tenant-commissioners of housing authorities. (See *Brown*, 33 Ill. App. 3d at 484 ("It is difficult to imagine that a tenant commissioner's interest would be any different from any nontenant commissioner selected from the citizenry").) Although the appellate court's judgment was later reversed, we do not construe this court's action as a rejection, for all time and in all circumstances, of the distinction that the appellate court attempted to draw in its opinion in that case. As we have stated, in *Brown* this court was concerned primarily with the continuing nature of the conflict potentially present in the relationship of housing authority tenant and commissioner. The functions performed by housing authorities and airports are sufficiently different, however, that we are not prepared to conclude that the same result must control in each instance. In addition, in the wake of *Brown* the legislature amended the conflict of interest provision of the Housing Authorities Act to permit at least one tenant to serve as a commissioner of each housing authority. The legislative response to this court's decision in *Brown* indicates that the landlord-tenant relationship was not deemed automatically disqualifying, at least in those circumstances, by that department of government charged with the lawmaking function.

Our decision in this case should not be construed as an endorsement of Commissioner Dames' conduct. We neither condemn nor condone his action in voting on matters affecting the park district airport while a business owned by him was a tenant of the facilities. Public service imposes on participants a number of duties, not all of which are defined or limited by statute. The only question before us, however, is whether the commis-

sioner was in violation of the statutory provisions with respect to the matters challenged here, and we conclude that he was not.

For the reasons stated, the judgment of the circuit court of Will County is reversed.

*Judgment reversed.*