Docket No. 81455–Agenda 16–March 1997.

CRAIG CUMMINS, Appellee, v. COUNTRY MUTUAL INSURANCE COMPANY, Appellant.

Opinion filed October 2, 1997.

JUSTICE HARRISON delivered the judgment of the court:

Plaintiff, Craig Cummins, filed suit in the circuit court of St. Clair County to recover underinsured-motorist benefits from defendant, Country Mutual Insurance Company (Country Mutual). Country Mutual filed a motion to dismiss plaintiff's complaint contending that the liable driver's vehicle was not underinsured, as defined in the Illinois Insurance Code, because the driver carried liability limits which were equal to the limits of plaintiff's underinsured-motorist coverage. The trial court granted defendant's motion to dismiss, and plaintiff appealed. The appellate court reversed and remanded the cause for further proceedings, with one justice specially concurring. 281 Ill. App. 3d 5. The appellate court held that plaintiff could state a claim for the underinsured-motorist coverage provided by Country Mutual. We granted defendant's petition for leave to appeal. 155 Ill. 2d R. 315.

The sole issue before this court is whether plaintiff could state a claim to recover the shortfall between his underinsured-motorist policy limits and the amount he actually recovered from the liable driver's insurance, when the liable driver's policy has limits identical to plaintiff's underinsured-motorist coverage, but the coverage was exhausted by payments to other injured claimants. For the reasons which follow, we affirm the judgment of the appellate court.

On February 20, 1992, Cummins suffered injuries in a two-car accident and sustained over $50,000 in damages. Cummins was the passenger in a car insured by Country Mutual. At the time of the accident, Cummins was covered by the Country Mutual insurance policy, which provided both uninsured- and underinsured-motorist benefits in the amount of $50,000 per person and $100,000 per accident. The other motorist, who collided with the Country Mutual vehicle, was determined to be at-fault and had insurance with identical liability limits of $50,000 per person and $100,000 per accident. Cummins received a court-approved, good-faith settlement of $35,000 from the at-fault driver, with the balance of the liability proceeds going to injured passengers in the at-fault driver's vehicle.

Cummins filed suit against Country Mutual seeking the $15,000 difference between the $35,000 which he received as a settlement from the at-fault driver's liability insurance and the $50,000 limit of Country Mutual's underinsured-motorist coverage. Cummins is the sole claimant to Country Mutual's underinsured-motorist coverage. Country Mutual filed a motion to dismiss plaintiff's complaint for failure to state a cause of action (735 ILCS 5/2–615 (West 1992)), claiming that the at-fault driver's vehicle was not “underinsured” as defined in the policy and section 143a–2(4) of the Illinois Insurance Code (215 ILCS 5/143a–2(4) (West 1992)). Defendant argued that even though plaintiff was not indemnified up to the $50,000 amount guaranteed by defendant's underinsured-motorist coverage, the at-fault driver's vehicle did not meet the definition of underinsured because the limits of liability coverage were identical to the limits of plaintiff's underinsured-motorist coverage. According to defendant, Cummins could not recover any underinsured-motorist benefits.

 Initially, the trial court denied defendant's motion to dismiss. However, the trial court reconsidered its original ruling in light of 
Purlee v. Liberty Mutual Fire Insurance Co.
, 260 Ill. App. 3d 11 (1994). The trial court felt compelled to follow the decision in 
Purlee
, which held that where the at-fault driver's liability insurance limits “equal or exceed the underinsured motorist coverage limits, underinsured motorist coverage is not applicable.” See 
Purlee
, 260 Ill. App. 3d at 27. Here, the at-fault motorist's insurance policy limits equalled plaintiff's underinsured-motorist policy limits. Based on the reasoning in 
Purlee
, the trial court found that the at-fault motorist was not underinsured, and granted defendant's motion to dismiss.

The appellate court reversed and remanded with one justice specially concurring. 281 Ill. App. 3d 5. The court found that the Country Mutual's insurance policy was ambiguous and subject to a reasonable interpretation other than the one urged by defendant. 281 Ill. App. 3d at 13. The court looked to the language of section 143a–2(4) and the intent of the statute to determine whether the availability of underinsured-motorist coverage should be measured by comparing the limit of the plaintiff's underinsured-motorist coverage to the stated limits of the at-fault motorist's liability coverage or to the amount the plaintiff actually recovers from the at-fault motorist.

 The court held that the relevant factor to be considered is the amount actually recovered from the at-fault driver, not the limits of liability coverage. 281 Ill. App. 3d at 13. In the present case, there was a gap between the $35,000 actually recovered from the at-fault motorist's insurance and plaintiff's $50,000 underinsured-motorist limits. The appellate court concluded that the at-fault motorist was underinsured and, therefore, plaintiff could state a claim for $15,000 in underinsured-motorist benefits. 281 Ill. App. 3d at 14.

As stated, at issue is whether Cummins can state a claim to recover the difference between his underinsured-motorist coverage limits and the amount he actually received from the at-fault motorist's liability policy. We must determine whether the at-fault vehicle in this case was considered an “underinsured motor vehicle,” enabling plaintiff to state a claim against Country Mutual for underinsured-motorist benefits. Section 143a–2(4), the underinsured-motorist provision of the Illinois Insurance Code, provides:

“For the purpose of this Code the term `underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle.” 215 ILCS 5/143a–2(4) (West 1992).

Country Mutual's insurance policy defined an underinsured motor vehicle as follows:

“2. 
Underinsured motor vehicle
 means any type of 
motor vehicle
 or trailer for which the sum of all liability bonds or policies at the time of an accident are less than the limit of this insurance.” (Emphasis in original.)

The issue before us is one of statutory construction, requiring the court to first look at the language of the underinsured-motorist statute to ascertain and give effect to the legislature's intent. 
State Farm Fire & Casualty Co. v. Yapejian
, 152 Ill. 2d 533, 540-41 (1992). In determining legislative intent, a court may also consider the reason and necessity for the law, the evils to be remedied, and the objectives to be attained. 
Yapejian
, 152 Ill. 2d at 541. In construing statutory language, a court will assume that the legislature did not intend to produce an absurd or unjust result. 
Yapejian
, 152 Ill. 2d at 541.

Country Mutual contends that under the clear language of section 143a–2(4) and the policy provision, underinsured-motorist coverage is triggered only when the claimant carries a higher amount of underinsured-motorist coverage than the amount of liability coverage maintained by the at-fault driver. See 
Purlee
, 260 Ill. App. 3d at 26. Defendant notes that the first sentence of section 143a–2(4) expressly defines an “underinsured motor vehicle” by reference to the limits of liability coverage compared to the limits of underinsured-motorist coverage. Therefore, according to Country Mutual, the amount of insurance proceeds actually recovered from the at-fault driver is irrelevant when determining whether a motorist is underinsured. Since there were identical limits of coverage in this case, Country Mutual claims that the unambiguous language contained in both section 143a–2(4) and the policy provision compels a finding that the at-fault motorist was not underinsured.

Plaintiff disagrees with this interpretation of section 143a–2(4) and the policy at issue and argues that the language defining an underinsured motorist is ambiguous. Specifically, plaintiff claims that the statute simply does not say whether the definition of underinsured motorist is meant to refer to the recoverable limits of an at-fault motorist's liability coverage or to the stated limits of that coverage, regardless of the amount actually available. Similarly, plaintiff contends that the definition contained in Country Mutual's policy does not specifically refer to the stated limits of the at-fault driver's liability insurance as opposed to the recoverable limits.

The underinsured-motorist statute defines an “underinsured motor vehicle” as one “for which the sum of the limits of liability under all bodily injury liability insurance policies *** is less than the limits for underinsured coverage.” 215 ILCS 5/143a–2(4) (West 1992). We agree with plaintiff that it is unclear from the definition whether underinsured-motorist status should be determined by comparing the limits of plaintiff's underinsured-motorist coverage to the stated limits of liability coverage or to the recoverable limits. The definition, contained in both the statute and Country Mutual's policy, does not expressly refer to the stated policy limits as opposed to the amount of liability insurance actually recovered. However, the second sentence of section 143a–2(4) does specifically refer to the amount of insurance proceeds actually recovered and provides that “[t]he limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies *** maintained on the underinsured motor vehicle.” 215 ILCS 5/143a–2(4) (West 1992).

Under this second sentence, the limits of an insurer's liability are calculated by taking the limits of underinsured-motorist coverage, less the amount actually recovered from the at-fault driver's liability insurance. The statute recognizes that the recoverability of proceeds must be considered when calculating the liability of an insurer who provides underinsured-motorist coverage. Therefore, the amount actually recovered may be the appropriate figure to be used in determining whether a vehicle is underinsured.

Country Mutual disputes this interpretation and urges us to follow the appellate court cases which hold that the second clause of the statute only needs to be examined after there has been an initial determination that the at-fault driver's vehicle is underinsured. See 
Purlee
, 260 Ill. App. 3d at 26-27; 
Moriconi v. Sentry Insurance of Illinois, Inc.
, 193 Ill. App. 3d 904, 908 (1990). Country Mutual contends that under 
Purlee
 and 
Moriconi
, for a liable vehicle to be considered underinsured, an injured party must carry higher amounts of underinsured-motorist coverage than the at-fault driver's liability coverage. 
Purlee
, 260 Ill. App. 3d at 26; 
Moriconi
, 193 Ill. App. 3d at 908. Country Mutual argues that first this determination of whether an at-fault vehicle is underinsured must be made, and then, if the vehicle meets the definition of “underinsured,” this second clause only comes into play to calculate the amount of liability.

We disagree. In ascertaining the meaning of a statute, the statute should be read as a whole and all of the relevant parts must be considered. 
Kraft, Inc. v. Edgar
, 138 Ill. 2d 178, 189 (1990). Therefore, the second sentence of section 143a–2(4) must be read in conjunction with the definition provided in the first sentence. The definition does not specifically refer to an “underinsured motor vehicle” in terms of comparing the limits of underinsured-motorist coverage to the amount of liability insurance actually recovered. However, the second sentence recognizes that injured parties may recover the difference between their underinsured-motorist policy limits and the amount they actually recover from the at-fault driver's liability insurance. We will not read the definition portion of the statute to prevent a recovery of insurance proceeds when the very next sentence authorizes the recovery of the same proceeds.

Defendant also interprets the language of the insurance policy itself to deny underinsured-motorist benefits when the limits of coverage are identical. As with the definition portion of the statute, we will not read Country Mutual's policy to deny coverage when such coverage is permitted in the second sentence of the underinsured-motorist statute. Although parties are generally free to enter into their own contracts, statutes in force at the time an insurance policy was issued are controlling. See 
Bertini v. State Farm Mutual Automobile Insurance Co.
, 48 Ill. App. 3d 851, 854 (1977). The purpose underlying a statute cannot be circumvented by inserting a contrary or restricting provision in an insurance policy. 
Severs v. Country Mutual Insurance Co.
, 89 Ill. 2d 515, 520 (1982). Any conflict between statutory and insurance policy provisions will be resolved in favor of the statutory provisions. 
DC Electronics, Inc. v. Employers Modern Life Co.
, 90 Ill. App. 3d 342, 348 (1980). Therefore, we resolve any conflict between the underinsured-motorist statute and Country Mutual's policy in favor of the statute. As stated, the statutory language permits plaintiff to recover underinsured-motorist benefits up to the policy limits.

Furthermore, providing coverage that fills the gap between the amount actually recovered from the liability insurance and the underinsured-motorist policy limits is consistent with the intent of the underinsured-motorist statute. The cardinal rule of statutory construction “is to ascertain and give effect to the true intent and meaning of the legislature.” 
Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.
, 158 Ill. 2d 76, 81 (1994). When intent is unclear form the statutory language itself, courts may consider the purpose behind the law and the evils the law was designed to remedy. 
Solich
, 158 Ill. 2d at 81. When construing section 143a–2(4), this court has stated that the purpose of underinsured-motorist coverage is the same as the underlying purpose of uninsured-motorist coverage, which is “to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance.” 
Sulser v. Country Mutual Insurance Co.
, 147 Ill. 2d 548, 555 (1992).

In 
Sulser
, this court addressed the issue of whether Country Mutual could reduce payments due to an insured under underinsured-motorist coverage by the amount of workers' compensation benefits received by the insured. 
Sulser
, 147 Ill. 2d at 551. To resolve this issue, the court examined the House debates on section 143a–2(3), which is now section 143a–2(4). The court concluded that the drafters' intent in providing underinsured-motorist coverage was to “fill the gap between the claim and the tortfeasor's insurance” and to prevent the insured from recovering amounts from the insurer over and above the coverage provided by the underinsured-motorist policy. 
Sulser
, 147 Ill. 2d at 556. The court provided an example of how underinsured-motorist coverage was to work, stating that if the insured recovered $50,000 through the tortfeasor's insurance policy, he or she would be entitled to a payment of $50,000 under a $100,000 underinsured-motorist policy. 
Sulser
, 147 Ill. 2d at 557. The court concluded that in enacting the underinsured-motorist statute, “the legislature avoided the absurdity of a situation where a policyholder would receive fewer benefits in the fortuitous event of being injured by an underinsured rather than by an uninsured motorist.” 
Sulser
, 147 Ill. 2d at 557.

If the position of Country Mutual were to be adopted, this purpose would be frustrated. Under Country Mutual's analysis, plaintiff could only receive $35,000 from the at-fault motorist who injured him. Cummins would be prevented from receiving payment of the $15,000 gap between his underinsured-motorist coverage and the tortfeasor's liability coverage. However, if the liable driver who caused Cummins' injuries had been completely uninsured, Cummins would be entitled to the full $50,000 individual limit of his uninsured-motorist policy. The very situation the legislature is trying to avoid would be realized under Country Mutual's construction of section 143a–2(4).

 We agree with 
Sulser
 and the appellate court that it would be absurd to allow Cummins to receive fewer benefits after being injured by an underinsured driver rather than an uninsured driver. 281 Ill. App. 3d at 12. 
Sulser 
recognizes that the very purpose of underinsured-motorist coverage is to cover the shortfall between the amount of insurance contracted for and the amount received from the liable driver. To achieve this purpose, motorists must be considered “underinsured” when the amount of liability insurance they actually pay out is less than the amount of underinsured-motorist coverage a policyholder obtains.

Further, in determining when coverage is appropriate, this court can also consider a policyholder's reasonable expectations and the coverage intended by the insurance policy. See 
Hoglund
 v. State Farm Mutual Automobile Insurance Co.
, 148 Ill. 2d 272, 279 (1992). In this case, premiums were paid for $50,000 of underinsured-motorist coverage and plaintiff reasonably expected coverage for damages caused by an underinsured motorist up to that amount. In addition, Country Mutual's insurance policy was intended to provide coverage for damages caused by an underinsured motorist and to place plaintiff in the same position as if the at-fault driver had adequate insurance. If Country Mutual's interpretation of the underinsured-motorist policy were adopted, the underinsured-motorist protection contracted for would no longer be available. In effect, the policyholder would be denied substantial economic value in return for the premiums paid. See 
Hoglund
, 148 Ill. 2d at 278.

The language and intent of the underinsured-motorist statute, as well as the policyholder's reasonable expectations, indicate coverage when there is a gap between the amount actually recovered from the liable motorist and the underinsured-motorist policy limit. We follow the statutory language and the legislative intent recognized by this court in 
Sulser
 and find that “underinsured” must be defined by comparing the amount of underinsured-motorist coverage to the amount of liability coverage actually recovered from the at-fault driver. To the extent that the amount of liability insurance actually recovered is less than the amount of underinsured-motorist coverage, the liable driver is considered underinsured.

Here, the limits of liability coverage were identical to the limits of plaintiff's underinsured-motorist coverage, but plaintiff recovered less than the available limits. Plaintiff received $35,000 in a court-approved, good-faith settlement from the at-fault driver's liability insurance. Plaintiff had a higher level of underinsured-motorist coverage in the amount of $50,000 per person and his damages exceeded this amount. Therefore, we hold that the at-fault driver was underinsured, and plaintiff is entitled to underinsured-motorist coverage. Under 
Sulser
, plaintiff needs $15,000 to “fill the gap” between his underinsured coverage limits and the amount of liability insurance actually recovered. We conclude that plaintiff is entitled to state a claim for $15,000 in underinsured-motorist benefits.

For the foregoing reasons, the judgment of the appellate court is affirmed.

Affirmed.

CHIEF JUSTICE FREEMAN, specially concurring:

Like my colleagues in the plurality, I believe that Country Mutual Insurance Company is obligated to pay its insured's claim for underinsured-motorist coverage. I cannot, however, ascribe to the rationale employed by the plurality in reaching that conclusion. Rather, I would take a different approach to resolving this case, one which more fully comports with the intent of the General Assembly when it drafted section 143a–2(4) of the Illinois Insurance Code.

I

The dispositive issue in this case is whether Cummins is entitled to underinsured-motorist coverage under Illinois law. The resolution of this issue turns upon the definition of the term “underinsured motor vehicle” found in section 143a–2(4). That provision provides in pertinent part:

“[T]he term `underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle.” 215 ILCS 5/143a–2(4) (West 1992).

A careful review of the foregoing language reveals that section 143a–2(4) establishes a two-part inquiry which must be utilized in determining whether an insured is entitled to underinsured-motorist coverage in any given case. The first step of the inquiry requires us to determine whether the “motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured” is, in fact, an “underinsured motor vehicle.” 215 ILCS 5/143a–2(4) (West 1992). To that end, the first sentence of section 143a–2(4) tells us that such a vehicle is so defined when its limits of liability are “
less than
 the limits for underinsured coverage provided the insured” in his or her underinsurance policy at the time of the accident. (Emphasis added.) 215 ILCS 5/143a–2(4) (West 1992). Once the vehicle qualifies as an underinsured motor vehicle under the first sentence of the statute, the second step of the inquiry requires us to next determine how much recovery, if any, is to be permitted to the insured from his or her underinsurance carrier. The second sentence of the statute provides the answer–recovery is limited to “the limits of [the underinsured policy] less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle.” 215 ILCS 5/143a–2(4) (West 1992). Put another way, the second sentence of the underinsured-motorist statute limits the underinsured-motorist payment to the limit of the underinsured coverage, less any proceeds received from the at-fault driver's policy.

Applying this two-step inquiry to the facts in this case, it becomes readily apparent that the vehicle which injured Cummins is not, in fact, an underinsured vehicle, at least according to a strict or literal reading of the definition of such a vehicle as set forth in the first sentence of section 143a–2(4). This result obtains because Cummins' underinsured policy limits, 
i.e.
, $50,000 per person/$100,000 per accident, are 
equal
 to the liability limits carried by the at-fault driver, 
i.e.
, $50,000 per person/$100,000 per accident. Thus, because the at-fault driver's vehicle does not qualify as an underinsured motor vehicle under the first sentence of section 143a–2(4), there is no need to look to the second sentence which pertains to the amount Cummins is entitled to recover.

The plurality, however, ignores the plain language of the first sentence of section 143a–2(4) and, looking to the second sentence, declares that the statute “recognizes that injured parties may recover the difference between their underinsured-motorist policy limits and the amount they actually recover from the at-fault driver's liability insurance.” Slip op. at 6. Having conflated the two sentences, and thereby obliterating the two-step inquiry established in the statute, my colleagues insist that the first sentence cannot prevent a recovery of insurance proceeds “when the very next sentence authorizes the recovery.” Slip op. at 6. I, however, cannot concur in the plurality's assertion that the second sentence “authorizes the recovery.” As I pointed out above, it is the first sentence of section 143a–2(4), and the first sentence alone, which controls the inquiry into whether the at-fault vehicle can be deemed an “underinsured motor vehicle.” Because there is no underinsured vehicle involved in this case by operation of that first sentence, the second sentence of section 143a–2(4) is wholly irrelevant. For this reason, I do not believe the plurality's analysis can withstand scrutiny.

II

Having set forth the reasons why I consider the plurality's interpretation of section 143a–2(4) to be flawed, I will now explain why I believe that underinsurance coverage is nevertheless mandated in this case. This court has long recognized that the proper interpretation of any statutory enactment cannot be based solely upon the bare language of the statute in question, but “must be grounded on the `nature, objects and the consequences that would result from construing it one way or the other.' ” 
Mulligan v. Joliet Regional Port District
, 123 Ill. 2d 303, 313 (1988), quoting 
Carrigan v. Illinois Liquor Control Comm'n
, 19 Ill. 2d 230, 233 (1960). To that end, this court has cautioned that “ `[w]hen the literal enforcement of a statute would result in great injustice and lead to consequences which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended and will adopt a construction which it may be reasonable to presume was contemplated by the Legislature.' ” 
People ex rel. Cason v. Ring
, 41 Ill. 2d 305, 312-13 (1968), quoting 
Village of Glencoe v. Hurford
, 317 Ill. 203, 220 (1925). Accordingly, courts will not construe a statute in such a way as to produce an absurd result. 
Croissant v. Joliet Park District
, 141 Ill. 2d 449 (1990).

The record in this case reveals that Cummins was not the only claimant to the proceeds available under the at-fault driver's liability policy. In fact, the other claimants had already exhausted those proceeds by the time Cummins received his court-approved, good-faith settlement from the at-fault driver. Therefore, although a face-value comparison may well reveal that Cummins' underinsured-motorist limits and the at-fault driver's liability limits are 
equal
 on paper, those amounts, in reality, are 
unequal 
due to the fact that the at-fault driver's resources have been depleted by the previous payouts to the other claimants to the policy. Under these circumstances, an absurd and unfair result obtains when the precise language in the first sentence of section 143a–2(4) is applied to Cummins. This is best reflected in a example given by Justice Maag in his special concurrence to the appellate court's opinion in this case:

“Assume that an automobile accident occurs. Assume further that the driver of vehicle `A' is negligent and is the cause of the accident. The driver of vehicle `A' carries $25,000 in liability coverage. The driver of vehicle `B' carries $25,000 in underinsured motorist coverage. Finally, assume that in vehicle `B' there is one passenger along with the driver of vehicle `B.' If the passenger in vehicle `B' immediately files suit and is awarded $25,000, and if the judgment is paid in full by driver `A' 's liability policy, then there would be no coverage left under driver `A' 's policy to pay a judgment later rendered in favor of the driver of vehicle `B.' The driver of vehicle `B,' despite having paid his insurance premium dutifully, would not be entitled to recover anything under his own underinsured motorist coverage if the position of Country Mutual in the instant case was adopted.” (Emphasis omitted.) 281 Ill. App. 3d 5, 15 (Maag, J., specially concurring).

I simply cannot believe that the legislature intended underinsured-motorist coverage in this state to be dependent upon the fortuity of being involved in an accident in which only a single person is injured and hence only a single claim is made against the at-fault driver's liability policy. I should also point out that, under the above hypothetical, the driver of vehicle “B” would have been in a better position had the driver of vehicle “A” been uninsured. At least then driver “B” could have recovered benefits pursuant to his or her uninsured-motorist coverage. Such results, of course, are absurd. They also contravene, rather than further, the General Assembly's stated purpose in drafting section 143a–2(4).

My research into the legislative history of section 143a–2(4) reveals that the statutory requirement that insurance companies offer underinsured-motorist coverage grew out of legislators' desire to provide compensation for victims of inadequately insured motorists. The General Assembly designed underinsured-motorist coverage so that consumers could have the “opportunity to protect [themselves]” from at-fault drivers who carry only minimal amounts of liability insurance. 81st Ill. Gen. Assem., House Proceedings, June 20, 1980, at 48 (statements of Representative Epton). For this reason, the legislation was regarded as one which acted on “behalf of the consumer.” 81st Ill. Gen. Assem., House Proceedings, June 20, 1980, at 48 (statements of Representative Epton). Specifically, the legislature intended to put the injured insured in the same position he or she would have occupied had the at-fault driver carried liability coverage equal to the insured's underinsured-motorist coverage. 81st Ill. Gen. Assem., House Proceedings, June 20, 1980, at 44-45 (statement of Representative Telcser). This was done in order to “fill the gap between the claim [of the injured insured] and the amount available from the underinsured.” 81st Ill. Gen. Assem., House Proceedings, June 20, 1980, at 44-45 (statement of Representative Telcser). Each of these objectives is thwarted, however, if the definition of an “underinsured motor vehicle” is given its literal meaning in a situation where, as in this case, multiple claimants are involved. Significantly, the legislative debates are devoid of any indicia that the members of the General Assembly ever addressed or considered the somewhat infrequent multiple-claimant situation with which we are confronted today.

In view of the foregoing, I believe that in situations involving multiple claimants, a literal interpretation of section 143a–2(4) “would result in great injustice and lead to consequences which the legislature could not have contemplated” or intended.
 Ring
, 41 Ill. 2d at 312. Accordingly, I believe that in such cases, the judiciary is “bound to *** adopt a construction which [may] be reasonable to presume was contemplated by the legislature.” 
Ring
, 41 Ill. 2d at 313. In order to do so, we must construe the first sentence of section 143a–2(4) so that the vehicle of the at-fault driver will be deemed an “underinsured motor vehicle” whenever the amount of that driver's liability coverage becomes less than the amount of the insured's underinsured-motorist coverage because of a payment of proceeds to other claimants. Only in this way can we be certain to effectuate the General Assembly's intent in enacting underinsured-motorist legislation and, at the same time, avoid the absurd results which occur whenever multiple claimants are involved. Applying my analysis to the facts of the present case, the vehicle of the at-fault driver should be considered an “underinsured motor vehicle” with respect to Cummins. In my opinion, it is this interpretation of section 143a–2(4), and not the interpretation proffered by the plurality, that obligates Country Mutual Insurance Company to pay Cummins' claim for underinsured-motorist coverage in this case.

JUSTICE McMORROW joins in this special concurrence.

JUSTICE HEIPLE, dissenting:

The Illinois General Assembly has explicitly rejected the policy adopted today by this court. The other opinions fail to discuss or even mention this fact. Instead, the court engages in what can only be described as an act of judicial legislation, defying the will of the people as expressed through their elected representatives. I therefore respectfully dissent.

The court today requires that an automobile insurer pay up to the full amount of underinsured-motorist coverage specified in its policy whenever an insured sustains losses which are not fully covered by the liability insurance of the driver at fault. This requirement was once mandated by the General Assembly. Section 148a–1 of the Illinois Insurance Code, effective March 1, 1980, provided as follows:

“Under underinsured motorist coverage the insurer agrees to pay damages the insured would be legally entitled to recover, but which are uncompensated because the total damages exceed the liability coverage limits of the owner of the at-fault vehicle.” Pub. Act 81–1202, eff. March 1, 1980.

This statute codified the policy adopted by the plurality, basing underinsured-motorist liability on the damages sustained by the insured.

This statute was subsequently repealed and replaced with the current version:

“[T]he term `underinsured motor vehicle' means a motor vehicle *** for which the sum of the limits of liability under all bodily injury liability insurance policies *** is less than the limits for underinsured coverage provided the insured *** at the time of the accident.” 215 ILCS 5/143a–2(4) (West 1994).

The new statute changed the basis of underinsured-motorist liability from the 
insured's damages
 to the 
relative limits of liability specified in the policies of the parties involved in the accident
. By continuing to base underinsured liability on the insured's damages, the plurality simply defies the legislature's repeal of the earlier version of the statute.

Until the Fifth District's decision in this case, every Illinois court which had considered the current version of the statute, including a previous panel of the Fifth District, agreed that the provision makes underinsured coverage contingent on the limits of liability specified in the policies of those involved in the accident. See 
Golladay v. Allied American Insurance Co.
, 271 Ill. App. 3d 465, 467-68 (1st Dist. 1995); 
Illinois Farmers Insurance Co. v. Tabor
, 267 Ill. App. 3d 245, 250 (2d Dist. 1994); 
Purlee v. Liberty Mutual Fire Insurance Co.
, 260 Ill. App. 3d 11, 26 (5th Dist. 1994); 
Moriconi v. Sentry Insurance of Illinois, Inc.
, 193 Ill. App. 3d 904, 908 (4th Dist. 1990). For example, the court in 
Golladay
 held:

“The determination of whether a tortfeasor's vehicle is underinsured is made by comparing the limits of liability insurance for bodily injury applicable to that vehicle with the limits of the injured person's UIM [underinsured motorist] coverage. [Citation.] It is only when the tortfeasor's coverage limits are less than the injured party's UIM coverage that the tortfeasor's vehicle meets the statutory definition of an `underinsured motor vehicle.' ” 
Golladay
, 271 Ill. App. 3d at 467-68.

Each of the appellate opinions cited above specifically rejected the construction of the statute advanced by the plurality. Today this court overrules these decisions solely by virtue of superior authority, not superior analysis.

The plurality seeks support for its position in the second sentence of section 143a–2(4) of the Insurance Code:

“The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies *** maintained on the underinsured motor vehicle.” 215 ILCS 5/143a–2(4) (West 1994).

The plurality asserts that this sentence of the statute “recognizes that the recoverability of proceeds must be considered when calculating the liability of an insurer who provides underinsured motorist coverage.” The plurality concludes that “[t]herefore, the amount actually recovered may be the appropriate figure to be used in determining whether a vehicle is underinsured.” Slip op. at 5.

Such a reading of the second sentence of section 143a–2(4) is wholly unwarranted and completely insupportable. That provision merely grants an insurer who is liable for underinsured-motorist coverage a set off for the amount of proceeds the plaintiff actually recovers from the at-fault driver's liability insurance. Whether the insurer is liable for underinsured coverage in the first place, however, is an entirely separate question, which is answered by comparing the limits specified in the insurance policies held by those involved in the accident. As one court has explained:

“The application of section 143a–2(4) first requires a determination of whether the tort-feasor's vehicle is `underinsured' based on the definition provided. The set-off clause mandating the reduction of UIM payments by the amounts received from the tort-feasor operates only if the tort-feasor's vehicle is classified as underinsured.” 
Illinois Farmers Insurance Co. v. Tabor
, 267 Ill. App. 3d 245, 250 (1994).

As noted above, until the instant case, this straightforward reading of the statute was the unanimous conclusion of courts which had considered this issue. Although the General Assembly has had ample opportunity to disturb these decisions through recent amendments to section 143a–2, it has declined to do so.

Both the plurality and the special concurrence offer several potentially persuasive reasons for the State of Illinois to require that an automobile insurer pay the underinsured-motorist coverage specified in its policy whenever the insured sustains losses which are not fully covered by the liability insurance of the driver at fault. The arguments contained in these opinions might very well convince legislators that the state should once again adopt such a requirement. Unfortunately, however, rather than allow legislators to decide this question, the court instead arrogates unto itself the legislative function, imposing by judicial fiat a requirement the General Assembly has specifically repealed. Because I believe that the current Illinois Insurance Code cannot possibly be read to contain such a requirement, I respectfully dissent.

JUSTICE MILLER joins in this dissent.