INDEPENDENT TRUST CORPORATION, Plaintiff-Appellee, v. ALAN L. HURWICK, Defendant (Laurence W. Capriotti *et al.*, Defendants-Appellants).

First District (3rd Division)   Nos. 1—01—3851, 1—01—4045 cons.

Opinion filed July 28, 2004.—Rehearing denied August 27, 2004.

Theodore T. Poulos and Terence H. Campbell, both of Cotsirilos, Tighe & Streicker, Ltd., of Chicago, for appellant Laurence W. Capriotti.

Daniel C. Meenan, Jr., of Feiwell & Meenan, of Chicago, for other appellants.

James H.M. Sprayregen, Jonathan C. Bunge, and J. Chad Mitchell, all of Kirkland & Ellis, of Chicago, for appellee.

JUSTICE HALL delivered the opinion of the court:

The plaintiff, Independent Trust Corp. (Intrust), brought suit against the defendants, Laurence W. Capriotti, Jack L. Hargrove, Alan L. Hurwick, ITI Enterprises, Inc. (ITI), and Wholesale Real Estate

Services, Inc.,[1] alleging breach of contract, fraud, breach of fiduciary duty, and conversion. The complaint also sought an accounting. The circuit court granted Intrust's motions for summary judgment, and judgments in the amount of $68,096,551.78 ($68.1 million) were entered against each of the defendants. The defendants, with the exception of Mr. Hurwick, appeal from the judgment of the circuit court.[2]

Messrs. Hargrove and Capriotti and the corporate defendants raise the following issues on appeal: whether the circuit court erred when it denied the defendants' motions for a more particular statement of facts and bills of particulars and whether the circuit court erred when it granted the motions for summary judgment. Mr. Capriotti raises an additional issue: whether the circuit court erred when it denied Mr. Capriotti's motion to dismiss counts II, III and IV of the complaint.

## FACTUAL BACKGROUND

Intrust was an Illinois corporate fiduciary organized under the Corporate Fiduciary Act (205 ILCS 620/1—1 et seq. (West 1998)) and was regulated by the Illinois Commissioner of Banks and Real Estate (the OBRE).[3] In re Possession & Control of the Commissioner of Banks & Real Estate of Independent Trust Corp., 327 Ill. App. 3d 441, 449, 764 N.E.2d 66 (2001) (Banks & Real Estate Corp.). Intrust served as the custodian for various investment trust assets that its customers placed in its custody. Banks & Real Estate Corp., 327 Ill. App. 3d at 449-50.

On April 14, 2000, after Intrust failed to comply with its directions, the OBRE seized control of Intrust, appointed PriceWaterhouse Coopers, LLP (PWC), as receiver and commenced an action for dissolution and liquidation of Intrust. Banks & Real Estate Corp., 327 Ill. App. 3d at 451.

The complaint in this case, filed on June 1, 2000, stems from the discovery of a $68.1 million cash shortage from trust funds deposited for investment with Intrust. See Banks & Real Estate Corp., 327 Ill. App. 3d at 449.

The following facts are taken from the complaint, depositions, affidavits, and exhibits in the record.

Intercounty Title Company (Intercounty) was owned by ITI Enterprises, Inc. Mr. Capriotti was president of both ITI and

---

[1]Prior to a change of name in 1997, Wholesale Real Estate Services, Inc., was known as Intercounty Title Company.

[2]In their appellants' brief, Mr. Hargrove and the corporate defendants state that Mr. Hurwick died on May 12, 2002.

[3]The Office of Banks and Real Estate.

Intercounty and was a director of Intrust. Mr. Hargrove was a director of Intercounty and chairman of Intrust's board of directors. Mr. Hargrove owned Intrust through Intrust's parent company, Madison Avenue Investments, Inc. Mr. Hurwick was the chief financial officer (CFO) of ITI and Intercounty.

As of 1992, Intrust's board of directors had five members. At the end of 1994, Intrust's board of directors consisted of Messrs. Hargrove, Capriotti, and Gary Bertacchi, president of Intrust.

In 1990, Mr. Capriotti instructed Gary Irwin, then president of Intrust, to set up an escrow agreement whereby Intrust could deposit trust-holder funds into an escrow account managed and controlled by Intercounty. Mr. Irwin had previously worked at Intercounty for Messrs. Capriotti and Hargrove. His salary at Intrust was paid by Intercounty. In 1992, Mr. Irwin returned to work at Intercounty at the direction of Mr. Hargrove.

Under the escrow agreement with Intercounty, Intrust agreed to deposit funds with Intercounty. In turn, Intercounty pledged that it would hold the funds in an interest-bearing account (the escrow account) at LaSalle National Bank (LaSalle Bank), unless and until it was specifically authorized by Intrust to remove the funds. Other than the above provision, Intrust had no control over the escrow account. Only Intercounty could remove funds from the escrow account. On December 4, 1990, Intrust deposited funds in the escrow account in the amount of $16,582,098.78 with Intercounty.

In the performance of its regulatory function, the OBRE noted that Intercounty commingled the Intrust funds with its other funds. In its February 28, 1994, report, the OBRE pointed out that the commingling created a breach of fiduciary duty and directed Intrust to insure that its deposits with Intercounty were segregated in a separate account. However, the OBRE's May 2, 1995, report noted that the funds were still being commingled and that Intrust was not receiving statements directly from LaSalle Bank, relying instead on spreadsheets supplied by Intercounty. The OBRE recommended that Intrust establish a separate trust account containing only cash that is the property of the various trusts. At the July 25, 1995, Intrust board of directors meeting, Mr. Capriotti stated that he would contact Intercounty and make sure Intrust's funds were segregated from other funds.

On January 1, 1996, the OBRE again directed the segregation of Intrust's funds being held by Intercounty, and again, Mr. Capriotti agreed to have the funds placed in a separate LaSalle Bank account prior to the next OBRE examination. Despite Mr. Capriotti's statement to the board of directors at the May 20, 1996, meeting that he

was going to have the funds segregated, Intrust's funds remained commingled with Intercounty's funds. Mr. Capriotti failed to respond to Mr. Bertacchi's repeated requests to place the funds in a segregated account.

On January 21, 1997, Mr. Bertacchi sent a memorandum to George Stimac, with copies to Messrs. Capriotti and Hurwick, authorizing and directing him to deposit $54 million in Intrust escrow funds into the new segregated escrow account (segregated account) opened at LaSalle Bank. Despite another memorandum to Mr. Capriotti, Intrust's funds were still not transferred to the segregated account.

At the March 28, 1997, Intrust board meeting, Mr. Capriotti advised that the segregation process would be completed by the end of the second quarter of 1997. On May 21, 1997, Mr. Bertacchi advised Mr. Hargrove of the difficulties he was having with Mr. Capriotti over the transfer of Intrust's funds to the segregated account.

At the June 6, 1997, board meeting, Mr. Capriotti advised that he was finalizing the segregation process and that it would be completed by the end of the second quarter. On or before June 27, 1997, Mr. Bertacchi spoke with Mr. Capriotti, who told him he would send Mr. Bertacchi a copy of a bank statement for the segregated account. On June 27, 1997, Mr. Bertacchi received a LaSalle Bank statement showing a balance of $54,894,943 in the segregated account, which corresponded with the amount that Intercounty should have had in Intrust's account, based upon Intrust's history of deposits and withdrawals. The LaSalle Bank statement was faxed, using an ITI fax cover sheet, and was sent by "Larry/Susan."

On August 20, 1998, Mr. Bertacchi sent a memorandum to Mr. Hargrove, explaining that, despite the fax from "Larry and Susan," Intrust's funds had never been transferred to the segregated account, and asked for his assistance.

On August 31, 1998, the OBRE issued another report in which it noted that Intrust did not hold signatory authority over the segregated account and did not receive bank statements from LaSalle Bank. The OBRE further noted the close relationship between Intercounty and Intrust which, arguably, created a situation where the corporate fiduciary was benefitting from the trust funds, a violation of trust principles. Intrust responded that its board had considered the comments and that Mr. Capriotti was taking steps to resolve the situation prior to the next audit.

Also, on or about August 31, 1998, Mr. Bertacchi received, either by fax or messenger, another LaSalle Bank statement from Intercounty, showing a balance of $54,840,466.02 in the segregated account. In a September 15, 1998, letter to Mr. Bertacchi on ITI letterhead, Mr.

Hurwick stated that Intercounty was holding $54,832,735.26 as of August 31, 1998.

At the December 10, 1998, Intrust board of director's meeting, the OBRE's report was discussed. In Intrust's written response to the OBRE's August 31, 1998, report, Mr. Bertacchi advised the OBRE that Mr. Capriotti had indicated that he would take the necessary steps to satisfy the OBRE as to the segregated account situation.

In an April 6, 1999, memorandum to Mr. Capriotti, Mr. Bertacchi advised that Intrust had lost a large investment advisor because Intrust could not produce a nonqualified audit report and that he had not made any progress with Mr. Hurwick toward securing Intrust's control of the segregated account.

On April 21, 1999, Mr. Capriotti called Mr. Bertacchi and proposed that Intrust deposit $3.5 million into the segregated account. According to the tape of the conversation with Mr. Capriotti, the transfer was necessary because Messrs. Hargrove and Capriotti needed the funds in connection with a business project, but the funds would be returned to Intrust by April 30, 1999.

At the April 23, 1999, board of directors meeting, Mr. Capriotti indicated that he would like to see the balances at LaSalle Bank increased by $10 million. The proposal was supported by Mr. Hargrove and, over the objection of Mr. Bertacchi, the board authorized another $5.7 million to be wire-transferred from Intrust to the segregated account. According to the tape recording of the meeting, Messrs. Capriotti and Hargrove claimed that they needed the money to secure more favorable interest rates on loans they had and that the funds would be returned to Intrust by April 30, 1999.

On April 21, 1999, Intrust wire-transferred $3.5 million into the segregated escrow account; on the same day, Intercounty transferred the same amount out of the segregated escrow account. On April 23, 1999, Intrust wire-transferred $5.7 million into the segregated escrow account; again, on the same day, Intercounty transferred the same amount out of the segregated escrow account. By May 1999, the funds had not been returned to Intrust, and Mr. Bertacchi's efforts to retrieve Intrust's funds were unsuccessful.

In May and June 1999, Mr. Bertacchi wrote to Mr. Hurwick requesting wire-transfers of $15 million and the $10 million from the segregated escrow account to Intrust, but received no response. Mr. Bertacchi also wrote to Mr. Capriotti requesting the return of the $9.2 million and that control of Intrust's deposits be transferred to Intrust. Finally, on August 3, 1999, Mr. Bertacchi wrote to Mr. Hurwick requesting proof that Mr. Binkowski and Mr. Bertacchi had been added as signatories on the segregated escrow account or, in the alternative,

the funds in the segregated escrow account were to be placed in an account under the control of Intrust. On August 10, 1999, Mr. Hurwick responded that he could take no action until the matters were addressed and voted on by the Intrust board of directors.

Also on August 10, 1999, the OBRE issued another report, requiring the dissolution of the escrow agreement between Intrust and Intercounty. At the August 24, 1999, Intrust board meeting, Mr. Capriotti stated that the funds from the segregated escrow account should be moved to a new account in Intrust's name at LaSalle Bank. On August 31, 1999, when Messrs. Bertacchi and Binkowski went to LaSalle bank to set up the new account, they were informed that Intercounty had transferred all of its accounts to another bank. Mr. Bertacchi again requested that Mr. Hurwick wire-transfer the Intrust funds held by Intercounty, but he failed to do so, even after Mr. Capriotti assured Mr. Bertacchi that he would direct Mr. Hurwick to transfer the funds.

On September 15, 1999, the OBRE issued a corrective action order to Intrust to terminate the escrow agreement with Intercounty and take control of the trust assets. At a September 30, 1999, board meeting, Mr. Capriotti assured the Intrust board of directors that its funds were in no danger due to the fact that Intercounty was audited not only by its own auditors but by the title insurance company and their reinsurer, who in turn was audited by the Illinois Department of Financial Institutions. The Intrust board sent a letter to the OBRE stating that the transfer of the funds to Intrust would take place no later than October 15, 1999.

The OBRE officials attended the November 9, 1999, Intrust board meeting. Mr. Capriotti stated that he would direct LaSalle bank to send the OBRE copies of the signature card and bank statements for the previous six months. He also stated that he would see to it that the segregated escrow account was closed, and the Intrust deposits returned to Intrust by November 20, 1999. At a November 17, 1999, meeting with the OBRE, Mr. Capriotti reiterated that the account would be closed and the funds transferred that day.

In December 1999, Mr. Capriotti sent the OBRE a signature card, signed by Messrs. Hurwick, Bertacchi, and Capriotti for an account at LaSalle Bank in the name of Intrust as Trustee. The OBRE also received a copy of a corporate resolution which purported to inform LaSalle Bank as to the signatory authority over the above account. Included was a note stating that Messrs. Capriotti and Hargrove would be working with LaSalle Bank to address the remaining questions concerning the escrow account. Although Mr. Hurwick had signed the resolution, he held no position at Intrust.

By the beginning of 2000, the funds had still not been transferred. Mr. Capriotti blamed the delay on problems encountered in opening the new account at LaSalle Bank. Mr. Capriotti assured the OBRE that Intrust had no problems and that the transfer delay was due to the unavailability of Intrust's president.

In January 2000, in a tape-recorded conversation, Messrs. Capriotti and Hargrove instructed Mr. Bertacchi to deposit more Intrust funds into the segregated escrow account. However, after Mr. Bertacchi threatened to resign, no transfer took place. On February 4, 2000, Mr. Hurwick wrote to Mr. Bertacchi advising him that, as of December 31, 1999, Intercounty was holding $67,817,367.99 in funds belonging to Intrust. On that same date, Mr. Capriotti told the OBRE that Mr. Hurwick had been the assistant treasurer of Intrust for two years, although Intrust had never employed Mr. Hurwick.

At the time Intrust was placed into receivership, there were no funds in the segregated escrow account. After reviewing and analyzing the relevant Intrust, Intercounty and bank records, Patricia Tilton, a principal with PWC, concluded that the Intercounty monthly statements to Intrust had falsely reported to Intrust the balances that were actually in the escrow accounts and that the escrow accounts actually held far less money. According to her affidavit, in most instances, Intercounty's monthly statements overestimated the amount of escrow funds being held by Intercounty by tens of millions of dollars.

## Circuit Court Proceedings

Initially, the defendants responded to the complaint by filing demands for bills of particulars and moving for a more definite statement. After those motions were denied, the defendants filed motions to dismiss pursuant to section 2—615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 2000)). After the denial of the motions to dismiss, the corporate defendants filed a "statement in lieu of answer" reiterating that they could not answer the complaint in its present form. Messrs. Hargrove and Capriotti filed answers asserting their fifth amendment privilege against self-incrimination.

Intrust filed separate motions for summary judgment against the corporate defendants, Mr. Hurwick, and Messrs. Capriotti and Hargrove.

On February 27, 2001, the circuit court granted summary judgment in the amount of $68.1 million on count I (breach of contract) and on count II (fraud) in favor of Intrust and against the corporate defendants. On July 31, 2001, the circuit court entered summary judgment in the amount of $68.1 million in favor of Intrust on counts III and IV (breach of fiduciary duty) and against Messrs. Hargrove and Capriotti and on count II against Mr. Capriotti (fraud).

This timely appeal followed.

## ANALYSIS

### I. The Complaint

The material in this section is nonpublishable.

### II. Summary Judgment

The defendants contend that the circuit court's granting of Intrust's motions for summary judgment was erroneous.

#### A. Standard of Review

This court reviews motions for summary judgment *de novo. Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292, 757 N.E.2d 481 (2001).

We are aware that in *Luu v. Kim*, 323 Ill. App. 3d 946, 752 N.E.2d 547 (2001), another panel of this court, while stating that summary judgment is reviewed *de novo*, nonetheless went on to state that the granting of summary judgment would be reversed only upon an abuse of discretion. *Luu*, 323 Ill. App. 3d at 952. To the extent that *Luu* holds that the abuse of discretion standard applies to review of the granting of summary judgment, it is an incorrect statement of the law and should not be followed. See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 691 (1992).

#### B. Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp.*, 154 Ill. 2d at 102. In determining whether a genuine issue of material fact exists, a court must construe the pleadings, admissions and affidavits strictly against the movant and liberally in favor of the opponent. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518, 622 N.E.2d 788 (1993).

The defendants contend that the circuit court erred when it denied their evidentiary challenges to the motions for summary judgment and that genuine issues of material fact existed which required that the summary judgment motions be denied.

##### 1. Evidentiary Matters

###### a. Supporting Affidavits

The defendants acknowledge that they did not obtain a ruling from the circuit court on their challenges to the affidavits filed in support of Intrust's motions for summary judgment. The defendants maintain, however, that the circuit court ignored their challenges to the affidavits when granting the motions for summary judgment.

"When a party moves to strike an affidavit filed in summary judgment proceedings, it is that party's duty to bring his motion to

the attention of the trial court and to get a ruling on the motion. Failure to obtain such a ruling will operate as a waiver of the objections to the affidavit. [Citation.]" *Woolums v. Huss*, 323 Ill. App. 3d 628, 633, 752 N.E.2d 1219 (2001).

However, in considering whether to grant a motion for summary judgment, the circuit court must determine the sufficiency of the affidavits, even in the absence of a motion challenging the affidavits. See *Jackson v. Graham*, 323 Ill. App. 3d 766, 774, 753 N.E.2d 525 (2001) (although evidentiary rulings are usually reviewed under an abuse of discretion standard, the granting of a motion to strike an affidavit as insufficient made in conjunction with a motion for summary judgment would be reviewed *de novo*).

Since our determination of whether summary judgment was properly granted in this case requires that we review the sufficiency of the affidavits, we will address the challenges raised by the defendants.

■ The defendants argue that the circuit court erred when it failed to grant their motions seeking to strike portions of the affidavit of James Binkowski and to strike the affidavit of Mark Vogel; the affidavit of Michael Morehead, together with certain attached documents; certain attachments to Intrust's motion for summary judgment against the corporate defendants; and related portions of other affidavits.

The defendants challenge Mr. Vogel's and Mr. Binkowski's affidavits on the basis that they were insufficient to authenticate certain records offered in support of the summary judgment motions.

For the admission of a business record, only proof that the records were made in the regular course of business and that it was in the regular course of business to prepare such records is necessary. *People v. Hagan*, 199 Ill. App. 3d 267, 287, 556 N.E.2d 1224 (1990), *aff'd*, 145 Ill. 2d 287, 583 N.E.2d 494 (1991) (witness's testimony that she did not know how the record keeping worked and that the records only looked like they came from the bank she worked for was sufficient to establish admission of bank records). The Vogel and Binkowski affidavits satisfied those requirements.

The defendants also challenge the affidavits of Joy Hall, an Intrust employee, and Michel Morehead, an OBRE attorney, as insufficient to authenticate certain documents. However, Ms. Hall's affidavit stated that she was familiar with the documents Intrust generated and that the documents she was authenticating were the types of records retained or generated as a normal part of Intrust's business.

Ms. Hall's affidavit also referred to documents that were sent to Intrust by Intercounty. Mr. Morehead's affidavit stated only that he received certain documents from Mr. Hurwick at Intercounty in

response to a subpoena. These documents were admissible as an admission of a party opponent. *Danville Polyclinic, Ltd. v. Dethmers*, 260 Ill. App. 3d 108, 114, 631 N.E.2d 842 (1994).

The defendants then challenge the affidavits of Ms. Tilton, of PWC, and Mr. Binkowski on the basis that their affidavits offered opinion testimony, although neither of them had been disclosed as an opinion witness in violation of Supreme Court Rule 213(g) (210 Ill. 2d R. 213).

Since the defendants' challenge is based upon a violation of a supreme court rule and not the sufficiency of the affidavits, the defendants' failure to secure a ruling by the trial court waives the issue. *Woolums*, 323 Ill. App. 3d at 633.

### b. Tape and Transcripts of Telephone Conversations

In support of the summary judgment motions, Intrust submitted tape recordings and transcripts of the tapes of telephone conversations of Messrs. Hargrove, Capriotti, Bertacchi and Hurwick.

Messrs. Hargrove and Capriotti contend that the circuit court should have suppressed the tape recordings since they were obtained in violation of the eavesdropping statute. Intrust responds that the undisputed evidence established that Messrs. Hargrove and Capriotti consented to the taping of their telephone conversations.

In Illinois, the eavesdropping statute provides that a person commits eavesdropping when he:

> "[u]ses an eavesdropping device to hear or record all or any part of any conversation unless he does so (1) with the consent of all of the parties to such conversation." 720 ILCS 5/14—2(a) (West 1998).

Effective December 15, 1994, section 14—1(d) of the eavesdropping statute defined " 'conversation' " as " 'any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation.' " *People v. Nestrock*, 316 Ill. App. 3d 1, 7, 735 N.E.2d 1101 (2000), quoting 720 ILCS 5/14—1(d) (West 1996). Evidence obtained in violation of the statute is inadmissible in any civil or criminal trial, with the sole exception of trials for a person charged with violating the eavesdropping statute. *Nestrock*, 316 Ill. App. 3d at 7; 720 ILCS 5/14—5 (West 1998).

Prior to the proceedings on the motions for summary judgment, Messrs. Hargrove and Capriotti filed motions to preclude the admission of the tape and the tape transcripts pursuant to section 14—5 of the Criminal Code of 1961 (720 ILCS 5/14—5 (West 2000)), supported by their affidavits. In his affidavit, Mr. Hargrove denied that he had

consented to the taping of any of his telephone calls to or from Intrust and that he was unaware that any of his calls had been tape-recorded. He stated that, while he was aware of the taping system at Intrust in which a recorded call was preceded by an announcement to that effect, private lines, which were answered either by the person to whom the call was directed or directed to voice mail, were not part of the taping system. In his affidavit, Mr. Capriotti stated that he was unaware that any of his conversations with Mr. Hargrove or Mr. Bertacchi were being recorded and that he never consented to the recording of those conversations.

In response, Intrust submitted the affidavit of Mr. Bertacchi and the affidavit and deposition testimony of James Jurewicz, an Intrust vice-president in charge of technology. According to these affidavits, in 1996, Intrust's board of directors, which included Messrs. Hargrove and Capriotti, sought and approved a new taping system that would record most, if not all, telephone calls. In his deposition, Mr. Jurewicz stated that, prior to the recording of the telephone conversations admitted in this case, he had told Mr. Capriotti that all of Intrust's telephone lines were recorded. Even though there were private lines that were answered by the person receiving the call or by voice mail, the private lines were all part of the taping system.

It is the function of the trial court to determine the admissibility of evidence, and its rulings will not be disturbed absent an abuse of discretion. *People v. Buss*, 187 Ill. 2d 144, 219, 718 N.E.2d 1 (1999). Here, however, the circuit court did not conduct an evidentiary hearing but decided the issue based upon the affidavits and the arguments of counsel. When the trial court makes its determination based upon documentary submissions only, credibility is not a factor and, on review, we have before us all that was before the trial court. *Stojkovich v. Monadnock Building*, 281 Ill. App. 3d 733, 743, 666 N.E.2d 704 (1996). When the only question before the court is the legal conclusion to be drawn from a given set of facts, and the credibility of the witnesses is not in issue, review of the trial court's holding is *de novo*. *Stojkovich*, 281 Ill. App. 3d at 743.

Intrust argues that undisputed evidence establishes that Messrs. Hargrove and Capriotti knew that all calls into and from the telephones at Intrust were recorded under the taping system installed in 1996, and, therefore, they consented to the recording of their telephone conversations. See *People v. Jenkins*, 128 Ill. App. 3d 853, 858, 471 N.E.2d 647 (1984) (where the victim could observe a police

officer listening on an extension telephone, she "consented" to his act of listening to her conversation with the defendant).[4]

The affidavit and deposition evidence did not set forth a "given set of facts." Rather, the competing affidavits raised a fact question as to whether Messrs. Hargrove and Capriotti were aware that their calls were being taped and placed the credibility of all of the affiants at issue.

In light of the fact that the evidence was disputed as to whether Messrs. Hargrove and Capriotti consented to the taping of their conversations, we conclude that the circuit court erred in denying their motions to preclude admission of the tape recordings and the tape transcript without an evidentiary hearing.

### c. Privilege Against Self-Incrimination

■ Messrs. Hargrove and Capriotti maintain that their assertion of the privilege against self-incrimination cannot be a basis for liability in this case.

In granting the motion for summary judgment, Judge Hall stated as follows:

> "Now, secondly, with respect to the question of adverse inferences that might be drawn from the plea of the Fifth Amendment in a civil case, the Court believes that it can draw those adverse inferences to the extent it might need to do so in this summary judgment context.
>
> The Court believes however that there is evidence of a breach of fiduciary duty that is not reliance [sic] on drawing adverse inferences from a plea of the Fifth Amendment."

The fifth amendment does not prohibit an adverse inference against civil litigants who refuse to testify in response to probative evidence against them. *Gabriel v. Columbia National Bank of Chicago,* 228 Ill. App. 3d 240, 246, 592 N.E.2d 556 (1992).

In *Gabriel,* the court held that it was a violation of the defendant's constitutional right against self-incrimination to grant judgment on the pleadings for the defendant's invocation of the privilege in her answer to the complaint. *Gabriel,* 228 Ill. App. 3d at 248. The court relied on *National Acceptance Co. of America v. Bathalter,* 705 F.2d 924 (7th Cir. 1983), in which the court held that " 'even in a civil case, a judgment imposing liability cannot rest solely upon a privileged refusal to admit or deny at the pleading stage. We conclude that defendant's claim of privilege should not have been deemed an admission, and that plaintiff should have been put to its proof, either by way

---

[4]While *Jenkins* was decided prior to the 1994 amendment, we find that its discussion of what constitutes "consent" is still relevant.

of evidentiary support for a motion for summary judgment or at trial.' " *Gabriel,* 228 Ill. App. 3d at 247, quoting *Bathalter,* 705 F.2d at 932.

In the context of a summary judgment motion, the court must construe the pleadings, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Gilbert,* 156 Ill. 2d at 518. While the circuit court could draw a negative inference from the assertion of the privilege at this stage of the proceeding, it could only grant summary judgment if there was evidentiary support of the motion as well.[5] See *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387 (7th Cir. 1995) (in a summary judgment proceeding, the assertion of the privilege against self-incrimination does not lead directly and without more to the entry of summary judgment but merely establishes the factual basis from which summary judgment analysis will proceed).

Therefore, in our review of the granting of the motions for summary judgment, we must determine whether there was sufficient evidentiary support for the motions for summary judgment in addition to the assertion of the privilege against self-incrimination.

### d. Destruction of the Computer Hard Drive
The material in this section is nonpublishable.

### 2. Genuine Issues of Material Fact
All of the defendants contend that issues of material fact precluded the granting of summary judgment in this case. In light of our prior determinations in this case, we must decide if the granting of the summary judgments as to Messrs. Hargrove and Capriotti was proper without the tape recording evidence.

### a. Corporate Defendants
The material in this section is nonpublishable.

### b. Mr. Hargrove
The material in this section is nonpublishable.

### c. Mr. Capriotti
Mr. Capriotti contends that genuine issues of material fact preclude summary judgment against him on the fraud and violation of fiduciary duty counts.

---

[5]In the context of standing in a forfeiture action, our supreme court has held that a claimant asserting the privilege against self-incrimination may suffer an adverse inference in the context of a motion attacking his standing. *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van,* 177 Ill. 2d 314, 685 N.E.2d 1370 (1997).

## i. Fraud

■ Mr. Capriotti contends that summary judgment should not have been granted in this case because fraudulent intent is normally a question of fact. However, where the evidence of intent to defraud is unrefuted, summary judgment is appropriate. See *Home Savings & Loan Ass'n of Joliet v. Samuel T. Isaac & Associates, Inc.*, 99 Ill. App. 3d 795, 806, 425 N.E.2d 985 (1981).

Mr. Capriotti maintains that a genuine issue of material fact exists as to whether he made any statements that he knew were false and were intended to induce Intrust to act and that Intrust relied on his statements.

Mr. Capriotti argues, first, that the minutes of the April 23, 1999, Intrust board meeting are unreliable because of the differences between the minutes and the transcript of the tape recording of the meeting.

The minutes of the April 23, 1999, Intrust meeting reflect that Mr. Capriotti brought up a review of the custodial trust funds depositories and proposed that $10 million be transferred from Intrust to increase the balance of the LaSalle Bank account. Over Mr. Bertacchi's objection, the motion passed.

Since we have determined that the tape recordings are not to be considered in our review of the granting of summary judgment, we cannot compare the differences between the written minutes of the April 23, 1999, Intrust board meeting and the transcript of the tape recording relied on by Mr. Capriotti.

However, we note that Mr. Capriotti signed the minutes he now claims are unreliable. In addition, Mr. Bertacchi's memorandum to Mr. Binkowski that Mr. Capriotti and Mr. Hargrove requested that Intrust funds be transferred to Intercounty was signed by both Mr. Capriotti and Mr. Hargrove.

Next, Mr. Capriotti challenges the reliability of Mr. Bertacchi's affidavit. He attacks Mr. Bertacchi's credibility by asserting that Mr. Bertacchi had a secret agreement with Intrust's receiver, that Mr. Bertacchi could not recall the circumstances surrounding the making of his affidavit, that Mr. Bertacchi made inconsistent statements as to an agreement he reached with the federal government and that Mr. Bertacchi violated his own fiduciary duty to Intrust by failing to follow up his request for the return of Intrust's funds. Mr. Capriotti concludes that given the factual inconsistencies, he should have been permitted to question Mr. Bertacchi before a jury.

Other than finding it "incredible" that Mr. Bertacchi did not have an agreement with Intrust's receiver because Mr. Bertacchi was not sued, Mr. Capriotti offers no evidence indicating the existence of such

an agreement. While Mr. Bertacchi testified in his deposition that he had no agreement with the government, he did acknowledge receiving a proffer letter from the government. Taken in context, Mr. Bertacchi's statements did not reflect negatively on his credibility. Mr. Bertacchi's failure to recall the details of the making of the affidavit does not make its contents less truthful. Finally, Mr. Capriotti fails to provide a meaningful connection between Mr. Bertacchi's alleged breach of fiduciary duty and the allegations of fraud against Mr. Capriotti.

Next, Mr. Capriotti maintains that there is no evidence that he created a forged LaSalle Bank statement which was sent to Intrust. He concedes that the document may be false but that there is no evidence that he was responsible for the fact that it was false.

According to Mr. Bertacchi's affidavit, at the May 20, 1996, Intrust board of directors meeting, Mr. Capriotti indicated that, in response to the OBRE's directive regarding the segregation of the Intrust escrow funds, he would have the funds segregated into a separate fund at LaSalle Bank. On or before June 27, 1997, Mr. Bertacchi spoke with Mr. Capriotti, who indicated to him that he would send him a copy of a bank statement for the segregated escrow account. On June 27, 1997, Mr. Bertacchi received a fax from ITI purporting to be a LaSalle Bank statement showing a balance of $54,894,943 in the account. The fax cover sheet stated that it was from "Larry/Susan." The actual amount in the escrow account, as reflected in the May 31, 1997, statement to Intercounty, was $45,949.24.

The above evidence, standing by itself, stops short of establishing as a matter of law that Mr. Capriotti knew that the faxed document was forged.

In connection with the $9.2 million that was transferred from Intrust to the escrow account, Mr. Capriotti maintained that the reason for the transfer was to achieve better interest rates. While the stated reason was perhaps an inappropriate one, given that the interest rate was to benefit Messrs. Capriotti and Hargrove, nonetheless, there is no evidence that it was not the reason for the transfer. Therefore, his statements to Mr. Bertacchi in this regard were not false and cannot support a claim of fraud. While Mr. Capriotti did assure Mr. Bertacchi that the funds would be returned to Intrust, there is no evidence establishing that he knew that the funds would not be returned when he made the statement to Mr. Bertacchi.

Without the tape recordings, the remaining evidence in support of summary judgment on the fraud count against Mr. Capriotti, even if considered with any adverse inferences from Mr. Capriotti's assertion of the privilege against self-incrimination, is insufficient for a determination that, as a matter of law, Mr. Capriotti defrauded Intrust.

We conclude, therefore, summary judgment against Mr. Capriotti on count II of the complaint must be reversed.

## ii. Breach of Fiduciary Duty

■ Mr. Capriotti owed a fiduciary duty to Intrust's account holders. See *Banks & Real Estate Corp.*, 327 Ill. App. 3d at 449-50; *Giagnorio*, 292 Ill. App. 3d at 325; see also *Masi*, 779 F.2d at 401. Further, as noted above, in its role as "escrowee" for Intrust, Intercounty was a trustee of both Intercounty and Intrust and owed a fiduciary duty to the trust's beneficiaries, in this case, Intrust's account holders.

Mr. Capriotti contends that, for purposes of summary judgment, Intrust failed to establish that he violated the fiduciary duty he owed to Intrust as a director. He maintains that the evidence failed to establish that he took the money from the escrow, relying on Ms. Tilton's deposition statement that the investigators had not yet reached any conclusions as to who took Intrust's funds or where the funds went.

As was the case with Mr. Hargrove, it was not necessary to establish that Mr. Capriotti took Intrust's funds. In order to prove a breach of fiduciary duty, Intrust was required to establish, as a matter of law, that Mr. Capriotti did not use his best judgment in connection with the establishment and operation of Intrust's escrow account and did not act solely in the best interests of Intrust.

According to Gary Irwin, president of Intrust from 1990 to January 1992, Mr. Capriotti instructed him to set up an escrow account, managed and controlled by Intercounty, and to deposit Intrust's funds to be transferred into that account. According to Mr. Bertacchi's affidavit, when the OBRE informed him that Intrust's funds needed to be segregated from Intercounty's funds and controlled by Intrust, it was Mr. Capriotti who assumed responsibility for meeting OBRE's requirements. However, Mr. Bertacchi's affidavit further establishes that Mr. Capriotti delayed the transfer of Intrust's funds into the segregated account, to be controlled by Intrust, for a substantial period of time.

The undisputed fact is that Intrust's money is missing, and even if Mr. Capriotti did not take the money himself, the evidence established that his lack of diligence in segregating Intrust's funds from Intercounty's funds, despite the warnings and orders of the OBRE, was not in the best interest of the account holders.

We further conclude that the above evidence established, as a matter of law, Mr. Capriotti's personal liability for Intercounty's breach of fiduciary relationship as alleged in count IV.

Unlike Mr. Hargrove, the evidence established that Mr. Capriotti

assumed responsibility for the escrow account, but he failed to act to insure the security of Intrust's funds by delaying compliance with OBRE's requirements for segregating Intrust's funds and failed to act when Intrust's funds were not repaid. In short, the evidence establishes that Mr. Capriotti was directly and personally involved in Intercounty's breach of its fiduciary relationship to Intrust.

We conclude that the evidence establishes as a matter of law that Mr. Capriotti breached his fiduciary duties as a director of Intrust and that he participated in Intercounty's breach of its fiduciary duty to Intrust. Therefore, the circuit court did not err in granting summary judgment to Intrust as to Mr. Capriotti on counts III and IV of the complaint.[6]

## CONCLUSION

In summary, we vacate the circuit court's order denying suppression of the tape recordings and the tape transcripts and remand for an evidentiary hearing to determine the admissibility of the tapes and the transcripts. We affirm the granting of summary judgment to Intrust as to the corporate defendants on the breach of contract and fraud counts of the complaint, but we vacate the damage awards made on those counts and remand to the circuit court for Intrust to make an election on which count damages are to be awarded.[7] We reverse the granting of summary judgment to Intrust as to Mr. Hargrove on the breach of fiduciary duty counts.[8] We reverse the granting of summary judgment to Intrust as to Mr. Capriotti on the fraud count. We affirm the grant of summary judgment to Intrust as to Mr. Capriotti as to the breach of fiduciary duty counts.

Finally, we wish to reiterate that, at this stage of the proceedings, the circuit court may not draw any adverse inferences from Messrs. Hargrove's and Capriotti's assertion of the privilege against self-incrimination.

The judgment of the circuit court is vacated in part, reversed in part, affirmed in part and remanded with directions.

---

[6]We note that in connection with the fiduciary duty counts, the circuit court specifically stated that it did not need to draw any adverse inferences based upon the assertion of the privilege against self-incrimination in light of the other evidence on those counts.

[7]Analysis is contained in the nonpublished portion of this opinion.

[8]Analysis is contained in the nonpublished portion of this opinion.

Vacated in part and reversed in part and affirmed in part; cause remanded with directions.

HOFFMAN, P.J., and SOUTH, J., concur.