# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Independent Trust Corp. v. Kansas Bankers Surety Co.*, 2011 IL App (1st) 093294

| | |
|---|---|
| Appellate Court Caption | INDEPENDENT TRUST CORPORATION, Plaintiff-Appellant, v. KANSAS BANKERS SURETY COMPANY, a Kansas Corporation, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-09-3294 |
| Filed | June 30, 2011 |
| Rehearing denied | August 8, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Section 6-7.1 of the Corporate Fiduciary Act tolls the contractual termination provision of a financial institution crime bond insurance policy, and when plaintiff, the insured, notified defendant, the insurer, of a claim or right of action before a receiver was appointed to liquidate the insured, the order granting the insurer summary judgment on the insured's declaratory judgment complaint seeking indemnification for losses plaintiff alleged were covered by the insurance was reversed, since section 6-7.1 of the Act tolled the termination provision on the date the receiver was appointed, and plaintiff had six months from the date of the receiver's appointment to comply with the notice/proof of loss provisions of the insurance. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-CH-4889; the Hon. Martin S. Agran, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Robert J. Shelist and Mark A. Schwartz, of Shelist & Schwartz, LLP, of Chicago, for appellant. |
|---|---|
| | John R. Zemenak, of Rathje & Woodward, of Wheaton, and Stanley R. Parker, of Parker & Hay, LLP, of Topeka, Kansas, for appellee. |
| Panel | JUSTICE CAHILL delivered the judgment of the court, with opinion. Presiding Justice Garcia and Justice R. Gordon concurred in the judgment and opinion. |

## OPINION

¶ 1    The core issue in this case is whether section 6-7.1 of the Corporate Fiduciary Act (Act) (205 ILCS 620/6-7.1 (West 2006)) tolls the contractual termination provision of a financial institution crime bond insurance policy (Bond) when the insured, Independent Trust Corporation (Intrust), notified the insurer, Kansas Bankers Surety Company (KBS), of a claim or right of action before a receiver was appointed to liquidate the insured. We believe the Act tolls the termination provision of the Bond. We reverse the trial court's order granting KBS's cross-motion for summary judgment and remand for further proceedings.

¶ 2    This case has a complicated litigation history, and various matters related to the dissolution and liquidation of Intrust have previously been before this court. See *In re Possession & Control of the Commissioner of Banks & Real Estate of Independent Trust Corp.*, 327 Ill. App. 3d 441, 764 N.E.2d 66 (2001) (*Possession of Intrust*); *Independent Trust Corp. v. Hurwick*, 351 Ill. App. 3d 941, 814 N.E.2d 895 (2004). We revisit the facts here to the extent necessary to understand the issues raised on appeal.

¶ 3    Intrust was an Illinois corporate fiduciary organized under the Act and regulated by the Illinois Commissioner of Banks and Real Estate (the CBRE). *Possession of Intrust*, 327 Ill. App. 3d at 449. Intrust served as a custodian for various investment trust assets customers placed in its custody, such as individual retirement accounts, qualified benefit plans and personal trusts. *Possession of Intrust*, 327 Ill. App. 3d at 449-50.

¶ 4    On December 20, 1999, Intrust and KBS executed the Bond in question. Under the Bond, KBS agreed to indemnify Intrust for various losses resulting from criminal activity, including losses incurred from fraudulent acts committed by employees, forgeries and securities. These insuring agreements were subject to two relevant conditions and limitations of the Bond: (1) a termination provision and (2) a notice/proof of loss provision.

¶ 5    The termination provision provides that the Bond terminates "immediately upon the taking over of the Insured by a receiver or other liquidator or by State or Federal officials." The provision also terminates KBS's liability for a loss discovered after the appointment of a receiver:

"Termination of the bond as to any Insured terminates liability for any loss sustained by such Insured which is discovered after the effective date of such termination.

After termination or cancellation, no State or Federal official, agency, receiver, or liquidator, acting in the capacity of supervisor, liquidator, receiver, regulator, corporate, or any other capacity shall have or exercise any right to make any claim against the Underwriter, unless a Proof of Loss, duly sworn to, with full particulars and complete documentation has been received by the Underwriter prior to the termination or cancellation of this bond."

¶ 6        The notice/proof of loss provision of the Bond reads:

"(a) At the earliest practicable moment, not to exceed 30 days, after discovery of loss, the Insured shall give the Underwriter notice thereof.

(b) Within 6 months after such discovery, the Insured shall furnish to the Underwriter proof of loss, duly sworn to, with full particulars."

¶ 7        The Bond was effective from December 20, 1999, to December 20, 2000, and provided insurance coverage in the amount of $10 million. The Bond covered losses discovered during the policy period, irrespective of whether the losses occurred during that period.

¶ 8        As of April 14, 2000, Intrust acted as custodian for approximately $1.84 billion in cash and noncash assets. *Possession of Intrust*, 327 Ill. App. 3d at 450. In the course of its business, Intrust held large amounts of cash on a daily basis in a single, commingled account. *Possession of Intrust*, 327 Ill. App. 3d at 450. From December 1990 through April 23, 1999, Intrust transferred substantial amounts of cash from the commingled account to an escrow account at Intercounty Title Company (Intercounty). *Possession of Intrust*, 327 Ill. App. 3d at 451. Intercounty's corporate officers were also, to varying degrees, corporate officers of Intrust. See *Hurwick*, 351 Ill. App. 3d at 943-44. Because a majority of the transferred funds was never returned to Intrust, the CBRE directed Intrust to reestablish control of the money. *Possession of Intrust*, 327 Ill. App. 3d at 450-51. In an effort to do so, Intrust retained counsel.

¶ 9        The record shows that Intrust's attorney sent a letter to KBS on March 10, 2000, informing it:

"Pursuant to Section 5(a) [(proof of loss provision)] of the Kansas Bankers Surety Company's Bonds & Policies for [Intrust], [Intrust] hereby provides notice that a loss of a type that may be covered by the bond has been or will be incurred by [Intrust]. Although the exact amount of the loss is currently unknown, it may exceed $63 million.

Pursuant to Section 5(b), [Intrust] will furnish the Underwriter of proof of loss, duly sworn to, with full particulars at the earliest practicable moment."

¶ 10       On March 13, 2000, KBS responded to the letter, directing Intrust to provide a proof of loss within six months of the date of discovery of the loss. On April 14, 2000, because Intrust failed to reestablish control of the money transferred to Intercounty, the CBRE seized control of Intrust under the Act, appointed PriceWaterhouseCoopers, LLP, as receiver and commenced an action for dissolution and liquidation of Intrust. *Possession of Intrust*, 327

Ill. App. 3d at 451. In June 2000, the receiver conducted an investigation and found a shortage of about $68.1 million in Intrust's cash trust assets. *Possession of Intrust*, 327 Ill. App. 3d at 452. The investigation showed the missing funds were misappropriated by Intercounty and its corporate officers over a period of 10 years. *Possession of Intrust*, 327 Ill. App. 3d at 450. Intrust sent its first proof of loss to KBS on October 25, 2000. Intrust sent its second proof of loss to KBS on November 30, 2000.

¶ 11     The receiver sued Intercounty and the court found that the shortage should be allocated among the affected account holders. *Possession of Intrust*, 327 Ill. App. 3d at 457. We affirmed the court's allocation order on direct appeal. *Possession of Intrust*, 327 Ill. App. 3d 441.

¶ 12     The receiver also sued Intrust's corporate officers for breach of contract, fraud, breach of fiduciary duties, conversion and an accounting. The complaint sought compensatory and punitive damages in excess of $68 million. In 2001, the court granted summary judgment in favor of Intrust and against the various defendants for fraud and breach of fiduciary duty.

¶ 13     After the court entered judgments against its corporate officers, Intrust filed a complaint against KBS for declaratory judgment, seeking indemnification for losses Intrust alleged were covered under the Bond. Intrust claimed it was entitled to coverage under three separate agreements of the Bond: (1) agreement A, providing fidelity coverage in the amount of $5 million for losses resulting from dishonest or fraudulent acts committed by an "employee"; (2) agreement D, providing $3 million in coverage for forgeries or alterations; and (3) agreement E, providing $3 million in coverage for securities. Intrust maintained that KBS's refusal to provide payment under the Bond constituted a vexatious and unreasonable delay in violation of section 155 of the Illinois Insurance Code (Code) (215 ILCS 5/155 (West 2004)).

¶ 14     KBS answered Intrust's complaint, raising three affirmative defenses: (1) Intrust's claims were barred by waiver and estoppel; (2) the claims were barred by the termination and the notice/proof of loss provisions of the Bond; and (3) KBS reserved the right to assert additional defenses that may be revealed through discovery.

¶ 15     Intrust moved for summary judgment on KBS's affirmative defenses. In its amended motion for summary judgment, Intrust argued, as a threshold matter, that its claim was not barred by the termination provision of the Bond because section 6-7.1 of the Act tolled that provision on April 14, 2000, the date the receiver was appointed to liquidate Intrust. Intrust also argued that KBS waived the notice/proof of loss requirement by failing to assert lack of notice as a defense. In the alternative, Intrust claimed it complied with the notice requirement on March 10, 2000, the date its attorney sent a letter to KBS informing them of a possible loss.

¶ 16     KBS responded that Intrust was not entitled to summary judgment because it failed to satisfy the time requirements of the Bond. KBS argued that Intrust's claim was barred by the termination provision of the Bond because Intrust did not discover the loss before the appointment of the receiver which triggered the automatic termination of the Bond on April 14, 2000. KBS maintained that Intrust's claim was barred by the plain language of both the termination and the notice/proof of loss provisions of the Bond because Intrust failed to file a timely "proof of loss, duly sworn to, with full particulars" before the receiver was

appointed and the Bond terminated. KBS also filed a cross-motion for summary judgment based on these two arguments.

¶ 17 The court bifurcated the summary judgment proceedings, addressing Intrust's motion for summary judgment on KBS's affirmative defenses first. The court denied Intrust's motion for summary judgment with respect to KBS's affirmative defense based on the termination provision of the Bond. In a written order, the court found that KBS was not liable for the loss because Intrust did not discover the loss before appointment of a receiver on April 14, 2000, the date the Bond was terminated under the termination provision. In reaching this conclusion, the court did not consider whether section 6-7.1 of the Act tolled the termination provision on the appointment of a receiver.

¶ 18 In a separate written order, the court addressed KBS's cross-motion for summary judgment. The court took notice of its earlier conclusion that the termination provision terminated the Bond on April 14, 2000, and that KBS was not liable for the loss at issue because the loss was not discovered until after that date. Based on this, the court found that KBS owed no duty to indemnify Intrust and granted KBS's cross-motion for summary judgment. Intrust appeals.

¶ 19 Summary judgment is appropriate if the pleadings, depositions and admissions on file show no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006). Summary judgment is a drastic measure and should be allowed only when the right of the moving party is clear and free from doubt. *Mydlach v. DaimlerChrysler Corp.*, 226 Ill. 2d 307, 311, 875 N.E.2d 1047 (2007). We review *de novo* a trial court order granting summary judgment. *Mydlach*, 226 Ill. 2d at 311.

¶ 20 Intrust argues that the court erred in concluding that the termination provision of the Bond terminated the Bond on the appointment of the receiver. Intrust claims that section 6-7.1 of the Act tolled the termination provision for six months because that section tolls all deadlines facing a receiver.

¶ 21 Section 6-7.1 of the Act, "[t]olling of the statute of limitations," provides:

"If the Commissioner appoints a receiver to take possession and control of the assets of the beneficiaries of such fiduciary relations, for the purpose of holding such assets as fiduciary for the benefit of such beneficiaries pending the winding up of the affairs of the corporate fiduciary being liquidated and the appointment of a successor fiduciary or fiduciaries for such beneficiaries, any period of limitation fixed by statute, rule of court or agreement which would otherwise expire on a claim or right of action in favor of or against the beneficiary of such fiduciary relations, or upon which an appeal must be taken or a pleading or other document which must be filed by a corporate fiduciary on behalf of a beneficiary in any pending action or proceeding shall be tolled for a period of 6 months after the appointment of a receiver ***." 205 ILCS 620/6-7.1 (West 2006).

¶ 22 Intrust argues that the termination provision of the Bond attempts to circumvent section 6-7.1 tolling by terminating the Bond immediately on the appointment of a receiver. Intrust claims that the termination provision is void because it conflicts with the public policy expressed in section 6-7.1.

¶ 23    KBS responds that section 6-7.1 applies only to policy provisions that set a date for the termination of the Bond following the appointment of a receiver. KBS argues that the termination provision in question does not conflict with section 6-7.1 because it does not set a date for when the Bond would expire after appointment of a receiver but, rather, requires certain conditions to be fulfilled before the receiver is appointed and the Bond terminated.

¶ 24    Neither the parties nor our research provided Illinois cases discussing similar termination provisions. KBS relies on federal cases upholding substantially similar termination provisions. See *Federal Deposit Insurance Corp. v. Aetna Casualty & Surety Co.*, 903 F.2d 1073 (6th Cir. 1990) (finding that a bond provision providing for termination of the bond on takeover of the insured by the FDIC was not void); *Sharp v. Federal Savings & Loan Insurance Corp.*, 858 F.2d 1042 (5th Cir. 1988) (finding an identical termination provision to be enforceable); *California Union Insurance Co. v. American Diversified Savings Bank*, 948 F.2d 556 (9th Cir. 1991) (enforcing a substantially similar termination provision). Although it is helpful to look to other jurisdictions for guidance, we are not bound by those decisions and must decide the case in a manner consistent with Illinois law. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 370, 522 N.E.2d 758 (1988).

¶ 25    Under Illinois law, courts will apply the terms of an insurance policy as written, unless those terms contravene public policy. *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 372, 757 N.E.2d 881 (2001). Statutes are an expression of Illinois public policy. *American Federation of State, County & Municipal Employees v. State*, 124 Ill. 2d 246, 260, 529 N.E.2d 534 (1988). The purpose of a statute cannot be circumvented by inserting a contrary provision in an insurance policy. *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d 474, 483, 687 N.E.2d 1021 (1997); *Smith*, 197 Ill. 2d at 372. A statute in force at the time an insurance policy was issued is controlling and we resolve a conflict between a statute and an insurance policy in favor of the statute. *Smith*, 197 Ill. 2d at 372; *Cummins*, 178 Ill. 2d at 483.

¶ 26    Here, we believe the termination provision of the Bond cannot be read as precluding recovery because section 6-7.1 of the Act must be considered. Under the plain language of section 6-7.1, "any period of limitation fixed by *** agreement which would otherwise expire on a claim or right of action in favor of or against the beneficiary *** shall be tolled for a period of 6 months after the appointment of a receiver." 205 ILCS 620/6-7.1 (West 2006). The termination provision in question effectively fixes a limitation period on Intrust's claim or right of action to be the date a receiver is appointed regardless of whether the claim was in existence before the appointment of the receiver. This the provision cannot do. We find that under section 6-7.1 a claim or right of action in existence on the date the receiver is appointed tolls the operation of the Bond by six months. Because the record shows Intrust notified KBS of a claim or right of action on March 10, 2000, a month before the receiver was appointed, section 6-7.1 tolled the termination provision on April 14, 2000, the date the receiver was appointed.

¶ 27    We are unpersuaded by KBS's argument that Intrust was required to comply with all elements of the notice/proof of loss provision before the appointment of the receiver. Under the plain language of section 6-7.1, the only requirement to trigger tolling is the existence

of a claim or right of action on the date the receiver is appointed. As mentioned, the March 10, 2000, letter was sufficient to notify KBS of Intrust's claim or right of action. In its response to the letter, KBS acknowledged as much by directing Intrust to provide a proof of loss within six months of the date of discovery of the loss. Although the March 10, 2000, letter did not comply with the notice/proof of loss provision as it was not "duly sworn to, with full particulars," it did not need to because section 6-7.1 tolled the Bond, including the requirements of the notice/proof of loss provision, for six months. With the benefit of tolling, Intrust had six months from April 14, 2000, the date the receiver was appointed, to comply with the notice/proof of loss provision of the Bond.

¶ 28    KBS argues that even if section 6-7.1 is applicable to the Bond it is still entitled to summary judgment because Intrust did not submit proof of loss within six months of the receiver being appointed. We note that in its response to the March 10, 2000, letter, KBS directed Intrust to provide a proof of loss within six months of the date of discovery of the loss, not the date the receiver was appointed. The receiver did not discover the loss until June 2000. Intrust sent its first proof of loss to KBS on October 25, 2000. Under this timeline, Intrust's proof of loss appears to be timely. We need not resolve this matter here. We believe there exists a question of fact as to whether Intrust complied with the notice/proof of loss provision of the Bond within the extended six-month period allowed by section 6-7.1 of the Act. Given our ruling on this issue, we need not consider the other arguments raised by Intrust.

¶ 29    We reverse the summary judgment entered on behalf of KBS and remand for further proceedings.

¶ 30    Reversed and remanded.