# Illinois Official Reports

## Appellate Court

*Independent Trust Corp. v. Kansas Bankers Surety Co.*,
2016 IL App (1st) 143161

| | |
|---|---|
| Appellate Court Caption | INDEPENDENT TRUST CORPORATION, Plaintiff-Appellant and Cross-Appellee, v. KANSAS BANKERS SURETY COMPANY, a Kansas Corporation, Defendant-Appellee and Cross-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-3161 |
| Filed | September 30, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-CH-4889; the Hon. Martin S. Agran, the Hon. Lee Preston, and the Hon. David B. Atkins, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Shelist & Schwartz, LLP, of Chicago (Robert J. Shelist and Mark A. Schwartz, of counsel), for appellant.<br><br>Leo & Weber, P.C., of Chicago (Michael J. Weber and Grace Winkler Cranley, of counsel), for appellee.<br><br>Gordon & Rees Scully Mansukhani LLP, of Chicago (Randall I. Marmor and Scott L. Schmookler, of counsel), for *amicus curiae* The Surety & Fidelity Association of America. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Independent Trust Corporation (Intrust), appeals the circuit court's order granting summary judgment in favor of defendant, Kansas Bankers Surety Company (Kansas Bankers), finding that plaintiff's underlying lawsuit seeking indemnification under a financial institution crime bond was time-barred. Intrust contends the circuit court erred in granting summary judgment where the filing requirements provided in the crime bond at issue were tolled pursuant to section 143.1 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/143.1 (West 2000)). Intrust additionally contends that the circuit court erred in finding it was not entitled to indemnification coverage under the crime bond at issue. On cross-appeal, Kansas Bankers contends the circuit court erred in finding the crime bond's termination provision conflicted with Illinois public policy and erred in finding Intrust properly provided notice of loss and proof of loss. Based on the following, we affirm the circuit court's finding that Intrust's lawsuit was untimely.

¶ 2                                    FACTS

¶ 3    This case has a long and complicated procedural history. This court has previously considered matters related to the dissolution and liquidation of Intrust. See *In re Possession & Control of the Commissioner of Banks & Real Estate of Independent Trust Corp.*, 327 Ill. App. 3d 441 (2001); *Independent Trust Corp. v. Hurwick*, 351 Ill. App. 3d 941 (2004). Additionally, in a prior opinion, this court reversed and remanded the underlying lawsuit for further proceedings. *Independent Trust Corp. v. Kansas Bankers Surety Co.*, 2011 IL App (1st) 093294. We present only those facts necessary to understand the issues currently on appeal.

¶ 4    Intrust's primary business was as a trustee for individual retirement accounts, as well as for other qualified plans, land trusts, 1031 trusts, personal trusts, and other arrangements. Intrust requested, and was granted, a bond from Kansas Bankers effective from December 20, 1999, to December 20, 2000, providing $10 million in insurance coverage. The bond was titled a "financial institution crime bond" (crime bond) and it provided fidelity coverage, in addition to coverage for numerous other types of losses, such as forgery or alteration, securities, counterfeit currency, extortion, and others. More specifically, the crime bond, in relevant part, provided fidelity indemnification for:

> "Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others.
>
> Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent:
>
>> (a) to cause the Insured to sustain such loss, and
>>
>> (b) to obtain financial benefit for the Employee or another person or entity."

The crime bond covered losses discovered during the policy period, irrespective of whether the losses occurred during that period. Section 5 of the crime bond provided:

"(a) At the earliest practicable moment, not to exceed 30 days, after discovery of loss, the Insured shall give the Underwriter notice thereof.

(b) Within 6 months after such discovery, the Insured shall furnish to the Underwriter proof of loss, duly sworn to, with full particulars.

\*\*\*

(c) Legal proceedings for the recovery of any loss hereunder shall not be brought prior to the expiration of the 60 days after the original proof of loss is filed with the Underwriter or after the expiration of 24 months from the discovery of such loss."

In addition, section 12 of the crime bond provided a termination provision that, in pertinent part, stated the policy would be terminated immediately upon the appointment of a receiver.

¶ 5    Our prior opinion in this case provided the following background facts:

"As of April 14, 2000, Intrust acted as custodian for approximately $1.84 billion in cash and noncash assets. [Citation.] In the course of its business, Intrust held large amounts of cash on a daily basis in a single, commingled account. [Citation.] From December 1990 through April 23, 1999, Intrust transferred substantial amounts of cash from the commingled account to an escrow account at Intercounty Title Company (Intercounty). [Citation.] Intercounty's corporate officers were also, to varying degrees, corporate officers of Intrust. [Citation.] Because a majority of the transferred funds was never returned to Intrust, the CBRE [the Illinois Commissioner of Banks and Real Estate] directed Intrust to reestablish control of the money. [Citation.]" *Independent Trust Corp.*, 2011 IL App (1st) 093294, ¶ 8.

¶ 6    In a March 10, 2000, letter, James Ferguson, counsel for Intrust, notified Kansas Bankers "that a loss of a type that may be covered by the Bond has been or will be incurred by [Intrust]. Although the exact amount of the loss is currently unknown, it may exceed $63 million." On March 13, 2000, Kansas Bankers acknowledged receipt of Intrust's March 10, 2000, letter and reminded Ferguson that the crime bond required proof of loss submitted within six months of the date of the loss's discovery.

¶ 7    On April 14, 2000, because Intrust failed to regain control of the transferred money, the CBRE took possession and control of Intrust. The CBRE appointed PricewaterhouseCoopers, LLP (PWC), as receiver and commenced an action for dissolution and liquidation of Intrust. On May 4, 2000, Lawrence Ward of PWC notified Kansas Bankers that a class action lawsuit had been filed against Intrust and that Intrust was seeking defense and indemnity under any applicable policies. In a letter dated May 8, 2000, Kansas Bankers notified Intrust that the crime bond had automatically terminated, as provided in section 12 of the crime bond due to the appointment of the receiver. Included with the letter was a refund check in the amount of $3495 for the prorated unearned premium.

¶ 8    Following an investigation, in June 2000, the receiver discovered a shortage of approximately $68.1 million in Intrust's cash assets resulting from misappropriation by Intercounty and its corporate officers over a period of 10 years. *Id.* ¶ 10. Laurence W. Capriotti and Alan L. Hurwick, corporate directors of Intrust, were convicted of mail fraud, wire fraud, and tax evasion. Judgments also were entered in favor of Intrust against the various corporate officers for fraud and breach of fiduciary duty. Additional actions were filed against Jack L.

Hargrove, Capriotti, Hurwick, and other defendants to recover compensatory and punitive damages in excess of $68 million on behalf of the Intrust account holders because of the defendants wrongful conduct.

¶ 9     On October 25, 2000, Intrust's attorney sent Kansas Bankers a letter indicating an attached proof of loss under the crime bond. The attachment included a one page document entitled "Proof of Loss." The "Proof of Loss" provided that the "claim is made for the full limits of the referenced policy ($3,000,000) and relates to the dishonest acts of Laurence Capriotti and Jack Hargrove." The "Proof of Loss" noted that "[r]eceiver has been unable to locate any employment applications or personnel files for the related employee(s). Investigation continues." The "Proof of Loss" was unsworn and signed by the receiver, but included a copy of Intrust's complaint against the directors. In an October 30, 2000, response letter, Kansas Bankers acknowledged receipt of the October 25, 2000, "Proof of Loss," but stated that the document failed to satisfy the requirements for asserting a proof of loss under the crime bond. In particular, Kansas Bankers stated that the proof of loss was required to be duly sworn to, that copies of complaints do not satisfy the requisite "full particulars," that the purported proof of loss had not been submitted within the time limits required by the crime bond, that acts of Hargrove and Capriotti were not covered under the bond because they were directors and were excluded from coverage under exclusion 2(d), and that the crime bond had automatically terminated on April 14, 2000, when Intrust was placed into receivership.

¶ 10     On November 30, 2000, Intrust sent an amended proof of loss that was nearly identical to the October 25, 2000, proof of loss; however, the amended proof of loss deleted all reference to Hargrove. In addition, the amended proof of loss was signed by the receiver and notarized. On December 12, 2000, Kansas Bankers requested proof from Intrust that Capriotti was an officer of Intrust, requesting "corporate minutes or other records" as well as proof that Capriotti was receiving a salary as an officer of Intrust and an explanation as to why Capriotti was not listed as an officer on the crime bond application. On December 18, 2000, Intrust replied that it was "unable to obtain copies of any paychecks, W-2 filings, or other payroll records" for Capriotti and explained that Capriotti was not listed as an officer on the crime bond application because he was not appointed to the officer position until after the crime bond went into effect. In response, in a letter dated December 22, 2000, Kansas Bankers notified Intrust that "payment will occur when and if we are provided with proof that a loss covered by the terms of the bond has been sustained and payment is required by the terms of the bond." Intrust did not respond. Then, on September 16, 2003, Intrust sent a letter to Kansas Bankers stating that it wanted to "redeem" the May 8, 2000, premium refund check but needed the check to be reissued since it was over two years old. Kansas Bankers reissued the check, which Intrust cashed.

¶ 11     On March 19, 2004, Intrust filed the underlying lawsuit seeking indemnification under the crime bond. In particular, Intrust sought indemnification under insuring agreement A (fidelity) in the amount of $5 million for losses resulting from dishonest and fraudulent acts committed by an employee, insuring agreement D (forgery and alteration), and insuring agreement E (securities). On May 24, 2004, Kansas Bankers filed its answer and affirmative defenses. In its answer, Kansas Bankers stated that Intrust's claim of loss was denied. Kansas Bankers asserted the following affirmative defenses: (1) that Intrust's claims were barred by waiver and estoppel; (2) that the claims were barred by sections 5(a) (timely notice of loss), 5(b) (timely proof of loss), and 5(c) (timely initiation of legal proceedings) and section 12 (termination

upon appointment of receiver) of the crime bond; and (3) that it reserved the right to assert additional defenses following discovery.

¶ 12    Intrust filed an amended motion for summary judgment[1] on Kansas Bankers' affirmative defenses and on coverage issues. With regard to Kansas Banker's affirmative defenses, Intrust argued, *inter alia*, that its claim was not barred by a termination provision within the crime bond because section 6-7.1 of the Corporate Fiduciary Act (Fiduciary Act) (205 ILCS 620/6-7.1 (West 2000)) tolled the contractual termination provision when Intrust notified Kansas Bankers of a claim or right of action before the receiver was appointed to liquidate the company. In response, Kansas Bankers argued that Intrust's claim was barred by the termination provision of the crime bond where Intrust did not discover the loss before the receiver's appointment on April 14, 2000, which triggered automatic termination of the crime bond. Kansas Bankers additionally argued that Intrust was not entitled to summary judgment because it failed to satisfy the timing requirements of the crime bond with regard to notice, proof of loss, and the filing of the underlying lawsuit. Kansas Bankers also filed a cross-motion for summary judgment on the coverage matter.

¶ 13    The circuit court bifurcated the proceedings and first ruled on Intrust's motion for summary judgment of Kansas Bankers' affirmative defenses. On July 11, 2008, in a written order, the circuit court denied the majority of Intrust's motion. In so doing, the circuit court found Intrust did not discover the subject losses before the receiver was appointed, thus the crime bond's termination provision (section 12) operated so as to terminate the crime bond upon appointment of the receiver. The court further found there were genuine issues of fact as to whether Intrust satisfied the notice provisions of the crime bond (section 5(a)). The court, however, granted summary judgment in favor of Intrust on the matter of proof of loss (section 5(b)). More specifically, the circuit court found Intrust submitted a proof of loss on October 25, 2000. The court then found that the October 25, 2000, proof of loss coupled with the results of prior lawsuits finding liability on the part of Intercounty and its corporate officers provided sufficient detail with respect to the purported cause of loss and allowed Kansas Bankers to investigate the claim. The court noted that "the fact that [Kansas Bankers] requested more information, specifically documentation establishing that Capriotti was a salaried employee does not change the result." The circuit court additionally denied summary judgment related to the timeliness of the underlying lawsuit, finding a genuine issue of material fact existed as to when Intrust's claim was denied by Kansas Bankers thus preventing the court from determining the effect of section 143.1 of the Insurance Code. The circuit court finally denied summary judgment on Kansas Bankers' affirmative defense of waiver and estoppel.

¶ 14    On November 9, 2009, the circuit court addressed the issue of indemnity coverage under the crime bond. Intrust sought $10 million in coverage under the crime bond's insuring agreements A (fidelity), D (forgery and alteration), and E (securities). Kansas Bankers responded by asserting the following defenses: (1) that the loss was not discovered while the crime bond was in effect; (2) that Intrust failed to provide a proof of loss while the crime bond was in effect; (3) that Intrust failed to provide a sufficient notice of loss; and (4) that Intrust failed to file the declaratory judgment action in a timely fashion. The circuit court denied Intrust's motion for summary judgment, finding, based upon its 2008 order in which it

---

[1]Intrust's initial motion for summary judgment was filed on December 20, 2007, and its amended motion for summary judgment was filed on February 1, 2008.

determined the crime bond terminated upon the appointment of the receiver, that the loss had not been discovered while the crime bond was in effect, which was on June 1, 2000.

¶ 15    On appeal, this court reversed the circuit court's July 11, 2008, order related to summary judgment of Kansas Bankers affirmative defenses. On June 30, 2011, this court held that the crime bond's termination provision conflicted with section 6-7.1 of the Fiduciary Act where, under section 6-7.1, "a claim or right of action in existence on the date the receiver is appointed tolls the operation of the Bond by six months." *Independent Trust Corp.*, 2011 IL App (1st) 093294, ¶ 26. This court further held that "[b]ecause the record shows Intrust notified KBS of a claim or right of action on March 10, 2000, a month before the receiver was appointed, section 6-7.1 tolled the termination provision on April 14, 2000, the date the receiver was appointed." *Id.* In addition, this court determined that the March 10, 2000, letter was sufficient to notify Kansas Bankers of Intrust's claim or right of action, which satisfied the requirement to trigger the tolling under section 6-7.1 of the Fiduciary Act. *Id.* ¶ 27. Intrust was not required to comply with the notice/proof of loss provision of the crime bond in providing notice that was "duly sworn to, with full particulars" in order to satisfy section 6-7.1. This court concluded that "there exists a question of fact as to whether Intrust complied with the notice/proof of loss provision of the Bond within the extended six-month period [beginning on April 14, 2000] allowed by section 6-7.1 of the [Fiduciary] Act." *Id.* ¶ 28. This court, however, noted that Kansas Bankers advised Intrust that it was required to provide proof of loss within six months of discovery of the loss, not the appointment of the receiver—thus, modifying the start of the six-month date from April 14, 2000 (appointment of receiver), to June 2000 (the receiver's discovery of the loss). Accordingly, proof of loss was due by December 2000. The cause was remanded for further proceedings.

¶ 16    On remand, the parties renewed their cross-motions for summary judgment. In a May 24, 2012, written order, the circuit court noted that the law-of-the-case doctrine applied to the appellate court findings, such that section 6-7.1 of the Fiduciary Act tolled the termination provision of the crime bond for six months, thus providing Intrust until December 1, 2000, to tender proof of loss and that the March 10, 2000, notice of loss satisfied the terms of the crime bond. The circuit court also relied on its July 11, 2008, order that Intrust's proof of loss was sufficient to satisfy the crime bond. As a result, the circuit court determined that the remaining issue was whether the underlying lawsuit was timely filed in conjunction with section 5(d) of the crime bond, namely, within 24 months of discovery of the loss. Because the loss was discovered on June 1, 2000, and the lawsuit was filed on March 19, 2004, the circuit court held that Intrust failed to comply with section 5(d) of the crime bond. The court, however, granted summary judgment in Intrust's favor, finding the 24-month period was tolled pursuant to section 143.1 of the Insurance Code because Kansas Bankers never tendered a denial prior to the lawsuit being filed. In so finding, the circuit court rejected Kansas Bankers' argument that section 143.1 of the Insurance Code did not apply based on the statute's exception for insurance contracts regarding fidelity and surety. The court found that the crime bond could not be considered a fidelity bond because the fidelity insuring agreement was such a small fraction of the crime bond's overall coverage. The circuit court held that the limiting period of section 5(d) of the crime bond was tolled and the underlying lawsuit was timely filed.[2]

_____

[2]This order was amended and superseded on June 25, 2012, without modifying the substance thereof.

¶ 17 In a second June 25, 2012, written order, the circuit court denied Intrust's motion for summary judgment, finding it was not entitled to indemnification under the terms of the crime bond. In terms of insuring agreement A for fidelity, the court stated that the issue was "whether the parties [responsible for the loss, *i.e.*, Capriotti, Hargrove, Hurwick, Intercounty, and another company] were employees of Intrust." The circuit court determined that Intrust had not met its burden of showing they were "employees." Intrust filed a motion to reconsider the June 24, 2012, order, which the circuit court denied on April 25, 2014.

¶ 18 Kansas Bankers filed a motion to reconsider portions of the circuit court's June 25, 2012, order related to the affirmative defenses. In a April 25, 2014, written order, the circuit court clarified the following issues: (1) whether the crime bond actually terminated pursuant to section 12 and whether section 12 was voided in its entirety as contrary to public policy; (2) whether adequate notice of loss was provided, whether Kansas Bankers waived the notice requirement, and whether prior orders decided the issue; (3) whether timely and adequate proof of loss was ever filed and whether the issue was decided by prior orders; and (4) whether proof of loss was filed such that section 143.1 would be triggered and whether the crime bond was exempted from section 143.1 as a fidelity agreement.

¶ 19 With regard to the termination provision of the crime bond, the circuit court clarified, based on this court's earlier decision, that section 12 was void as contrary to public policy. As a result, the crime bond could not have been terminated pursuant to appointment of the receiver. The court, therefore, denied Kansas Bankers' motion to reconsider based on the termination provision.

¶ 20 With regard to whether Intrust sent timely and sufficient notice to Kansas Bankers, the circuit court clarified that this court's prior order combined the requirements for notice of loss (section 5(a)) and proof of loss (section 5(b)). Relying on the language of section 5(a) related to notice of loss, the circuit court noted that the March 10, 2000, letter did not satisfy the requirements of section 5(a) because that provision required valid notice after discovery of the loss. Because June 1, 2000, was the undisputed date of discovery, the circuit court vacated that part of its May 24, 2012, order indicating that the March 10, 2000, letter satisfied the notice requirements of section 5(a). However, the circuit court pointed out that section 6-7.1 tolled all deadlines imposed upon the receiver under the crime bond, including the 30-day limitations period in section 5(a), thereby giving Intrust 6 months from June 1, 2000, to send Kansas Bankers notice of loss. The circuit court found the October 25, 2000, letter satisfied the notice requirements of section 5(a), thus denying the motion to reconsider.

¶ 21 With regard to whether Intrust submitted timely and sufficient proof of loss (section 5(b)) to Kansas Bankers, the circuit court reviewed this court's June 30, 2011, order and held that an issue of material fact remained. The circuit court, therefore, vacated any portion of its 2012 finding that proof of loss was either timely or sufficient. The court granted Kansas Bankers' motion to reconsider the proof of loss provision.

¶ 22 Finally, with regard to whether the underlying lawsuit was timely filed by Intrust pursuant to section 5(d) of the crime bond, the circuit court considered the language of the crime bond in conjunction with section 143.1 of the Insurance Code. Section 5(d) provided that legal proceedings must be filed within 24 months from discovery of such loss. The loss was discovered on June 1, 2000, and the case was filed in 2004. However, in its June 25, 2012, written order, the circuit court determined the 24-month filed period was tolled pursuant to section 143.1 because (1) Kansas Bankers never filed a denial of Intrust's claim under the

crime bond prior to the filing of the instant lawsuit and (2) the crime bond at issue did not qualify as a fidelity policy. On reconsideration, the circuit court continued to find that Kansas Bankers never denied Intrust's claim but determined that Intrust failed to satisfy its burden of providing legal authority to ascertain whether the crime bond was a fidelity. As a result, the court vacated its finding that the crime bond was not a fidelity policy under section 143.1 and granted Kansas Bankers' motion to reconsider that portion of the order. The court further found that equitable tolling had never been considered in the court's prior orders and, therefore, was not open to reconsideration. Nevertheless, the circuit court determined that equitable tolling did not apply.

¶ 23    Kansas Bankers then filed a renewed motion for summary judgment. On September 11, 2014, the circuit court partially granted and partially denied the motion. With regard to the issue of whether Intrust's proof of loss was adequate, the circuit court found that Intrust's October 25, 2000, and November 30, 2000, letters constituted timely proof of loss. The court, therefore, denied Kansas Bankers' motion for summary judgment on the proof of loss issue. With regard to the issue of whether Intrust initiated legal proceedings within the time allowed by the crime bond, the circuit court found that, based on the definition of fidelity in the Insurance Code and *First Hays Bankshares, Inc. v. Kansas Bankers Surety Co.*, 769 P.2d 1184, 1187 (Kan. 1989), a foreign case holding that a crime bond was an insurance contract, the crime bond at issue in this case was a type of fidelity insurance. As a result, the tolling provision of section 143.1 was inapplicable and, therefore, the lawsuit was not timely filed. As a result, Kansas Bankers' motion for summary judgment was granted as to timeliness of the underlying lawsuit.

¶ 24    Intrust filed a timely notice of appeal,[3] appealing the circuit court's June 25, 2012, order related to coverage, both of the court's April 25, 2014, orders, and the court's September 11, 2014, order. Kansas Bankers filed a timely cross-appeal, appealing that part of the April 25, 2014, order denying, in part, its motion for reconsideration and that part of the September 11, 2014, order denying, in part, its renewed motion for summary judgment.[4] On September 11, 2015, Kansas Bankers filed a motion to file an *amicus curiae* brief. The motion was granted and an *amicus curiae* brief was filed by the Surety and Fidelity Association of America (SFAA).

¶ 25                                    ANALYSIS

¶ 26    Intrust first contends the circuit court erred in granting Kansas Bankers' renewed motion for summary judgment as to section 5(d) of the crime bond, thereby ruling that Intrust's lawsuit was untimely.

¶ 27    Summary judgment is appropriate if the pleadings, depositions, and admissions on file show there exists no genuine issue of material fact and the moving party is entitled to judgment

---

[3]Intrust filed its initial notice of appeal on October 14, 2014, but then filed an amended notice of appeal on the same date to correct an error in the case number contained in the initial filing.

[4]Intrust disputed whether Kansas Bankers timely filed a cross-appeal; the record, however, was supplemented to include a stipulation containing copies of Kansas Bankers' notice of filing of cross-appeal and notice of cross-appeal, reflecting that Kansas Bankers did timely file its cross-appeal in compliance with Illinois Supreme Court Rule 303(a)(3) (eff. June 4, 2008).

as a matter of law. 735 ILCS 5/2-1005(c) (West 2006). We review a circuit court's order granting summary judgment *de novo*. *Filliung v. Adams*, 387 Ill. App. 3d 40, 53 (2008).

¶ 28    A bond that "contains no ambiguity is to be construed according to the plain and ordinary meaning of its terms, just as would any other contract." (Internal quotation marks omitted.) *Private Bank & Trust Co. v. Progressive Casualty Insurance Co.*, 409 F.3d 814, 816 (7th Cir. 2005) (applying Illinois law). This court reviews the interpretation of a bond *de novo*. See *id.*

¶ 29    Pursuant to section 5(d) of the crime bond, Intrust was prohibited from bringing any legal proceedings for the recovery of any loss "prior to the expiration of 60 days after the original proof of loss is filed with the Underwriter or after the expiration of 24 months from the discovery of such loss."

¶ 30    Intrust concedes that it did not file the underlying lawsuit within 24 months of discovering the loss where the loss was discovered in 2000 and the lawsuit was not filed until 2004. Intrust, however, argues that the deadline for filing the suit should have been tolled pursuant to section 143.1 of the Insurance Code because Kansas Bankers "unequivocally never denied Intrust's claims until after this suit was filed."

¶ 31    Section 143.1 of the Insurance Code provides:

"Whenever any policy or contract for insurance, except life, accident and health, fidelity and surety, and ocean marine policies, contains a provision limiting the period within which the insured may bring suit, the running of such period is tolled from the date proof of loss is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part." 215 ILCS 5/143.1 (West 2006).

¶ 32    Initially, we must address a motion this court took with the case. More specifically, during the parties' briefing period, Intrust filed a motion to strike portions of Kansas Bankers' cross-appeal and brief and to strike the *amicus curiae*'s brief. In terms of the timeliness of the lawsuit, Intrust argued that Kansas Bankers improperly raised additional arguments in this second appeal that were not raised prior to the first appeal, thereby resulting in forfeiture. In particular, Intrust acknowledged that Kansas Bankers raised the timeliness of the lawsuit prior to the first appeal, but maintained that Kansas Bankers did not argue that the crime bond constituted a fidelity bond. According to Intrust, Kansas Bankers sought appellate review of the limitations issue on a "piecemeal basis, and to develop and raise arguments not previously and timely presented to the trial court, which is entirely improper." Intrust further argued that the *amicus curiae* brief improperly presented arguments that were never before the circuit court.

¶ 33    " '[T]he striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review.' " *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005) (quoting *Moomaw v. Mentor H/S, Inc.*, 313 Ill. App. 3d 1031, 1035 (2000)).

¶ 34    We find that Kansas Bankers' brief does not interfere with or preclude our review. In fact, review of Kansas Bankers' brief in support of its motion for summary judgment filed in June 2008 demonstrates that, at that time, Kansas Bankers argued section 143.1 of the Insurance Code did not apply because it exempts fidelity and surety insurance. A transcript of the circuit court proceedings held on May 13, 2008, confirms Kansas Bankers' argument that the crime bond was fidelity insurance and fell within the applicable definition of the Insurance Code. Therefore, contrary to Intrust's position that Kansas Bankers raised the argument for the first

time in conjunction with the second appeal, the record demonstrates the matter was raised before the circuit court in 2008. As a result, we deny Intrust's motion to strike Kansas Bankers' brief with regard to the timeliness arguments.

¶ 35    Moreover, the *amicus curiae* brief addressed the matter currently before this court, namely, whether the crime bond constituted fidelity insurance—a matter that, while raised prior to the first appeal, was not ruled on in the first appeal. See *Independent Trust Corp.*, 2011 IL App (1st) 093294. We find the *amicus curiae* brief properly advised this court as a "friend" of the court. See *In re J.W.*, 204 Ill. 2d 50, 73 (2003). Therefore, we will not strike the *amicus curiae* brief where it does not interfere with or preclude our review.

¶ 36    We now turn to the substance of Intrust's argument. Intrust argues that its claim was never denied prior to the filing of this lawsuit; therefore, section 143.1 of the Insurance Code operated to toll the crime bond's 24-month filing period. Kansas Bankers responds that the crime bond was classified as fidelity insurance, which was expressly exempted in section 143.1, thus rendering the tolling period of the statute inapplicable. Instrust, however, replies that the crime bond does not qualify as fidelity insurance because the bond includes other insuring agreements.

¶ 37    In order to resolve the parties' conflicting positions, this court must determine whether the crime bond issued to Intrust by Kansas Bankers constituted fidelity insurance. To do so, we first must gain an understanding of the crime bond itself.

> "The standard financial-institution bond is a unique insurance instrument with a long and detailed history" with "nearly every provision ha[ving] been developed in response to and tested by case law. [Citation.] The Standard Form No. 24 Financial Institution Bond is the latest incarnation of a series of bonds once known as 'banker's blanket bonds.' [Citations.] These bonds were first developed in response to the uniform contract marketed by Lloyd's of London, which was the only contract to provide fidelity, theft, burglary, holdup, and other types of coverage in one contract. [Citation.] The Surety Association of America and the American Bankers Association worked together in 1916 to draft their first bond, the Standard Form No. 1 Banker's Blanket Bond, to compete with the uniform contract offered by Lloyd's. [Citations.] Today, Standard Form No. 24 is the descendant of that first bond, containing six Insuring Agreements (Agreements A-F)." (Internal quotation marks omitted.) *First State Bank of Monticello v. Ohio Casualty Insurance Co.*, 555 F.3d 564, 568 (7th Cir. 2009) (applying Illinois law).

Accordingly, financial institution bonds were originally known as bankers' blanket bonds and offered multiple lines of insurance, including fidelity, within one bond.

¶ 38    To address the matter before this court, we also need to understand the term of art "fidelity." See Paul R. Devin & Allen N. David, *Discovery Under Fidelity Bonds: The Emerging Concept of the Insured's Duty of Inquiry*, 21 Tort & Ins. L.J. 543 (1986) ("fidelity" is a term of art used to describe insurance against crime-related risks). The Insurance Code defines fidelity and surety as:

> "Become surety or guarantor for any person, copartnership or corporation in any position or place of trust or as custodian of money or property, public or private; or, becoming a surety or guarantor for the performance of any person, copartnership or corporation of any lawful obligation, undertaking, agreement or contract of any kind, except contracts or policies of insurance; and *underwriting blanket bonds*. Such

- 10 -

obligations shall be known and treated as suretyship obligations and such business shall be known as surety business." (Emphasis added.) 215 ILCS 5/4(g) (West 2000). "Fidelity insurance is a form of insurance in which the insurer undertakes to guaranty the fidelity of an officer, agent, or employee of the insured, or to indemnify the latter for losses caused by dishonesty or a want of fidelity on the part of such a person." *RBC Mortgage Co. v. National Union Fire Insurance Co. of Pittsburgh*, 349 Ill. App. 3d 706, 712 (2004).

¶ 39    The crime bond in this case was entitled "Financial Institution Crime Bond." Although, based upon our research, the terms of art at issue here have not been litigated, case law and supporting resources recognize that a banker's blanket bond is synonymous with a financial institution bond and that both are considered fidelity insurance. See Devin & David, *supra* (fidelity bonds involve numerous types of bonds and encompasses financial institution bonds); 11 Steve Plitt et al., Couch on Insurance § 167:43 (3d ed. 2008) ("[a]s fidelity bonds, financial institution bonds are in fact a form of insurance"). In fact, fidelity bonds have consistently been recognized as multi-peril insurance.

> "At the beginning of corporate suretyship, a 'fidelity bond' was more like a surety bond, a three-party obligation executed by the principal and the surety to protect or indemnify the obligee against larceny or embezzlement committed by the principal, typically the employee. However, fidelity coverage came to encompass not only traditional employee dishonesty, but other related risks, and became more like a contract of insurance, using the terms 'underwriter' and 'insured' instead of 'surety' and 'obligee.' " James L. Knoll & Linda M. Bolduan, Financial Institution Bonds 5 (Duncan L. Clore ed. 1995).

¶ 40    As stated, we were unable to uncover case law expressly analyzing whether a financial institution crime bond is fidelity insurance; however, there are numerous examples of courts recognizing as much. For example, in *RBC Mortgage Co.*, this court recognized a "financial institution bond" as synonymous with a "fidelity bond." This court was asked to consider whether a loss sustained by a third party was covered under a theory that the claimed loss arose either from employee dishonesty or forgery. *RBC Mortgage Co.*, 349 Ill. App. 3d at 708. Even though this court was considering both employee dishonesty and forgery, we referred to the bond as a fidelity bond. *Id.* at 709, 712, 715 (describing coverage as "fidelity insurance" and discussing the "language in a fidelity bond").

¶ 41    Additionally, in an Illinois federal case for the Northern District, the court stated that " '[a] bankers blanket bond, sometimes called a fidelity bond or financial institution bond, offers bundled indemnification coverage for various specific risks, typically including financial loss from forgeries, employee dishonesty, and theft.' " *Federal Deposit Insurance Corp. v. RLI Insurance Co.*, 49 F. Supp. 3d 517, 523 (N.D. Ill. 2014) (quoting *Universal Mortgage Corp. v. Wurttembergische Versicherung AG*, 651 F.3d 759, 761 (7th Cir. 2011)). Similarly, in *First State Bank of Monticello*, the Seventh Circuit considered a standard financial institution bond that contained multiple insuring agreements. 555 F.3d at 568-69. The insured in that case sought to recover for a check kiting loss, not employee dishonesty. *Id.* at 569. Nevertheless, the Seventh Circuit, applying Illinois law, referred to the financial institution bond as a "fidelity bond" and declared that it reviewed the lower court's "interpretation of a fidelity bond" *de novo*. *Id.* at 566, 568; see also *State Street Bank & Trust Co. of Quincy v. United States Fidelity & Guaranty Co.*, 181 Ill. App. 3d 1081, 1082 (1989) (banker's blanket bond

"commonly known as a fidelity bond"); *Albers v. Indemnity Insurance Co. of North America*, 283 Ill. App. 260 (1935) (brokers' blanket bond considered fidelity bonds)**.**

¶ 42 Moreover, courts in foreign jurisdictions have recognized financial institution bonds as fidelity bonds. In *Lusitania Savings Bank, FSB v. Progressive Casualty Insurance Co.*, No. 04-3503, 2005 WL 1586618, at *1 (3d Cir. July 5, 2005), the Third Circuit considered a claim for embezzlement and forgery under an insurance agreement "known as a 'financial institution bond,' 'bankers' blanket bond,' or 'fidelity bond.' " The Third Circuit reviewed the forgery claim, but referred to the contract as a "fidelity bond agreement." *Id.* at *1-2.

¶ 43 Where the insurance industry, in particular the fidelity insurance industry, and our courts have considered financial institution bonds, such as the one here, to be fidelity insurance, we too recognize Kansas Bankers' financial institution crime bond to be fidelity insurance. As a result, we find section 143.1 of the Insurance Code did not act to toll the 24-month filing period required by section 5(c) of the crime bond. Intrust, therefore, failed to timely file the underlying lawsuit and summary judgment was proper.

¶ 44 In the alternative, Intrust urges this court to apply the doctrine of equitable tolling to ease the limitations period. We decline Intrust's request.

¶ 45 Equitable tolling of a limitations period is appropriate if the defendant has actively misled the plaintiff or the plaintiff has been prevented from asserting his or her rights in some extraordinary way. *Clay v. Kuhl*, 189 Ill. 2d 603, 614 (2000). "Extraordinary barriers include legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence." *Thede v. Kapsas*, 386 Ill. App. 3d 396, 403 (2008). The doctrine of equitable tolling is rarely applied by Illinois courts. *American Family Mutual Insurance Co. v. Plunkett*, 2014 IL App (1st) 131631, ¶ 33.

¶ 46 Intrust insists that it was prevented from asserting its rights because Kansas Bankers advised Intrust that its claims remained open and never issued a denial of those claims. Even assuming Kansas Bankers failed to notify Intrust that its claims were denied until after the filing of the underlying lawsuit, the record does not support a finding for equitable tolling. On December 12, 2000, in response to Intrust's November 30, 2000, amended proof of loss, Kansas Bankers requested additional proof to investigate whether the loss was covered by the terms of the parties' bond. Intrust, however, failed to provide the requested documentation. Then, on December 22, 2000, Kansas Bankers notified Intrust that "payment will occur when and if we are provided with proof that a loss covered by the terms of the bond has been sustained and payment is required by the terms of the bond." Intrust did not provide any response. In fact, Intrust did not communicate again until September 16, 2003, when it requested that Kansas Bankers reissue a premium refund check, which Kansas Bankers did and Intrust later cashed. The record does not reveal any additional attempts by Intrust to ascertain the status of its claims or to assist Kansas Bankers in the investigation of the claims. The record, therefore, does not support a finding that Kansas Bankers actively misled Intrust or prevented Intrust from asserting its rights in some extraordinary way. We find this is not one of those rare instances where the doctrine of equitable tolling should be applied to ease the limitations period.

¶ 47 Because we have concluded that Intrust's lawsuit was untimely, we need not consider the remaining contentions on appeal and cross-appeal. Accordingly, Intrust's motion to further strike Kansas Bankers' cross-appeal and brief are moot.

¶ 48                               CONCLUSION

¶ 49       We affirm the circuit court's September 11, 2014, order finding Intrust's lawsuit was untimely and granting summary judgment in favor of Kansas Bankers.

¶ 50       Affirmed.